LAURA W. RANDALL vs. RICHARD E. RANDALL.

Essex.  March 10, 1983. — October 27, 1983.

Present: GRANT, ROSE, & SMITH, JJ.

*Divorce and Separation*, Separation agreement, Judgment.

It was error for a probate judge to refuse specific enforcement of a separation agreement which was to survive the judgment of divorce and which was not incorporated therein, where, on the record, the judge's findings that the agreement was unfair and unreasonable were clearly erroneous; where there was no allegation or evidence of fraud or coercion in the agreement's adoption; and where the judge's findings as to changes in the respective financial circumstances of the parties did not reveal "countervailing equities" such as would preclude specific enforcement.  [29-32]

COMPLAINT for divorce filed in the Probate Court for the county of Essex on February 2, 1977.

A complaint seeking modification of the judgment, filed on April 11, 1979, was heard by *Freedman*, J.

*Scott N. King* for Richard E. Randall.

*Earl M. Weissman* for Laura W. Randall.

ROSE, J.  Richard E. Randall appeals from a judgment of the Probate and Family Court ordering him to make support payments to Laura W. Randall, his former wife, in excess of the amount fixed by the parties in a separation agreement which survived the judgment of divorce nisi and was not incorporated therein.  Richard contends that the judge erred in refusing specific enforcement of the separation agreement.  See *Knox* v. *Remick*, 371 Mass. 433, 438 (1976).  We agree.

The record before us includes the judge's "Findings of Fact and Conclusions of Law" and a transcript of all the evidence.  Thus "'the appeal brings before us all questions of law, fact, and discretion.' *Krokyn* v. *Krokyn*, 378 Mass.

206, 208 (1979), quoting from *Cohen* v. *Murphy*, 368 Mass. 144, 147 (1975)." *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981). However, we will not reverse findings made by the probate judge on the basis of the evidence unless we are convinced that they are "clearly erroneous". Mass.R.Dom. Rel.P. 52(a) (1975). See *Schuler* v. *Schuler*, *supra* at 368.

We summarize the relevant facts. The parties were married in 1958 and last lived together in 1971. On January 31, 1976, they signed a separation agreement (agreement) in contemplation of divorce. A judgment of divorce nisi was entered on February 2, 1977, granting custody of the parties' two children, then aged eight and fourteen, to Laura. The judgment made no provision for child support, alimony, or property division. The judgment made the following reference to the parties' agreement: "Signed agreement filed herewith is not merged into this judgment but shall have independent significance, all until further order of the Court."[1]

At the time of the divorce, both parties were in their forties. Richard received a salary in the neighborhood of $35,000 and regular salary increases. Laura was working full time as a manufacturer's representative but was earning only $35 weekly in commissions. Richard had received a college degree; Laura had attended a college of business administration for one and one half years and had received a stock broker's license. Laura had a problem in the lower lumbar region of her back which had been tentatively diagnosed as a ruptured disc. This problem did not curtail her ability to work full time or to engage in physical activities such as tennis and skiing.

The agreement is a comprehensive and carefully drafted document, twenty-two pages in length. It provides that "Husband and Wife desire by this Agreement to confirm their separation and to settle between themselves all ques-

---

[1] The qualification "all until further order of the Court" does not incorporate the agreement in the judgment. See *Moore* v. *Moore*, 389 Mass. 21, 23-26 (1983).

tions pertaining to their respective property rights, the support and maintenance of the Wife, the support, care and custody of the minor children and all other rights and obligations arising from their marital relationship." The parties declare in the agreement that "each has had independent legal advice by counsel of his or her own selection" and that "each believes the agreement to be fair, just and reasonable." The agreement provides that it shall survive the judgment of divorce nisi.

Pursuant to the agreement, Richard agreed to make unallocated monthly payments for alimony and child support combined on a decreasing schedule as follows: $1,000 from March, 1977, through January, 1978; $833.33 from February, 1978, through January, 1981; $583.33 from February, 1981, through January, 1982; $416.67 from February, 1982, through November, 1986; and no payments thereafter.[2] The agreement provides for adjustments in this schedule upon the occurrence of certain contingencies (e.g., Laura's remarriage), none of which is relevant here. Richard also agreed, among other things, to pay $3,000 per year for four years of college education for each child; to maintain health insurance on each child until emancipation (as defined in the agreement); to maintain life insurance adequate to cover the outstanding mortgage on the marital residence, naming Laura as beneficiary; and to pay for one half of capital improvements on the marital residence. The parties agreed that each would take a one-half interest in the marital residence, which was to be sold when the parties' younger child should reach the age of eighteen. There was

---

[2] The apparent objectives in devising this support schedule were to provide Laura with decreasing amounts of alimony; to provide monthly child support payments of $166.67 for each child until his eighteenth birthday; and to provide Laura with a sum sufficient to discharge her responsibility to make mortgage (principal, interest, taxes) payments on the marital residence until the agreed date for its sale. The payments were unallocated in order to secure tax benefits enuring ultimately to the good of both parties. See *Commissioner* v. *Lester*, 366 U.S. 299, 302 (1961). See *Heistand* v. *Heistand*, 384 Mass 20 (1981).

no other real or personal property to be divided. Laura agreed to be responsible for making the monthly mortgage payments on the marital residence, but also agreed that, if she failed to discharge this responsibility, Richard would be authorized to make the payments himself and deduct the amount from support payments. In light of these arrangements, the parties agreed to waive any additional rights they might otherwise have had against each other at any time.[3]

In April of 1979, Laura filed a complaint for modification of the judgment of divorce nisi stating that "[t]he health of the plaintiff [Laura] has prevented her from gainful employment and that coupled with inflation and rising costs has made it impossible for the plaintiff to properly support the minor child." The complaint sought a modification of the judgment to increase Richard's combined alimony and child

[3] The pertinent portions of the waiver provisions are as follows:

## "WAIVER OF CLAIMS

"In consideration of the provisions herein made, the Husband and Wife hereby each remise, release and forever discharge the other and their respective heirs, executors, administrators and their respective estates of and from all duties, claims, liabilities and obligations of every nature and whatever kind which otherwise he or she might have or claim under and by virtue of the marriage relationship between the parties or otherwise except as herein otherwise specifically provided. Although not limited thereto, the aforesaid mutual release and discharge includes support, maintenance, homestead, dower, curtesy, descent and distribution of property rights of every description, it being the intention of the parties hereto that henceforth there shall be as between them only such rights and obligations as are specifically provided for in this Agreement. . . ."

"*Wife's Waiver*: The Wife acknowledges that the provisions herein made for her support and for the support, maintenance and education of the Children are fair, adequate and reasonable, commensurate with her needs and with the Children's needs, the Husband's income and financial worth (which he has fully disclosed to her), and their previous standard of living. She further acknowledges that such provisions are fully satisfactory to her. Accordingly, she accepts the same in lieu of, and in full and final settlement and satisfaction of, any and all claims and rights that she may now or hereafter have against the Husband for her support and for the support, maintenance and education of the Children and otherwise."

support obligation to $1,200 monthly and to provide for further cost-of-living increases. Richard raised the agreement as a bar to the requested relief and sought dismissal of the complaint.

The action came before a judge of the Probate and Family Court on February 23, 1981.[4] The parties presented considerable evidence on Laura's health and on their respective financial circumstances, past and present. Since the divorce, Laura has undergone surgery for a ruptured disc. Despite the success of the surgery, Laura is now precluded from types of employment creating stress on the back. She has not had to curtail her recreational activities, tennis and skiing. Scant evidence was adduced with respect to the children's current needs. No evidence was adduced tending to show that the children's needs are not being met.

In his "Findings of Fact and Conclusions of Law," the judge made the following observations about the agreement: Laura was not given full ownership of the marital residence; Laura is responsible for mortgage payments and maintenance and upkeep costs on the marital residence; Laura pays taxes on support payments while Richard deducts support payments from his taxable income; and Richard's support obligations are to decrease with increases in Laura's income above $4,000. The judge found that Richard receives regular increases in salary; that the percentage of Richard's income which each support payment represents decreases over time; that Richard's present spouse earns approximately $10,000 annually; that, al-

---

[4] The judge correctly noted that a complaint for modification under G.L. c. 208, § 37, was not proper, since the judgment contained no support order to be modified. See *Kinosian* v. *Kinosian*, 351 Mass. 49, 52 (1966); *Kellermann* v. *Kellermann*, 10 Mass. App. Ct. 856 (1980). However, he declined to dismiss the complaint, electing instead to treat it as if it sought the same relief under the proper statutory provisions. There was some confusion with respect to which statutory provisions were properly applicable. Ultimately the judge viewed the complaint as seeking relief under G.L. c. 208, §§ 28 and 34. The judge questioned counsel for Richard whether, in light of his decision, counsel would need a continuance; after a brief discussion, counsel replied that he would not.

though certain types of employment are not feasible for Laura, she is capable of employment; and that inflation increases Laura's financial burdens. There was no finding made with respect to the children's current needs or the adequacy of the support available for them.

On the basis of these observations and findings, the judge concluded that the agreement was "unfair and unreasonable" and could be "disregarded". He further concluded that the deterioration of Laura's health and the improvement in Richard's financial circumstances since the entry of the judgment of divorce nisi together constituted a "material change of circumstances" justifying an order of alimony including child support after a divorce judgment under G.L. c. 208, § 34. Judgment was entered ordering Richard to pay to Laura: (1) $750 monthly for the support of herself and the two children, beginning December 1, 1981, and continuing indefinitely; and (2) one half of the monthly mortgage payments on the marital residence. Richard appeals from the judgment.

Provisions fixing interspousal support in a separation agreement should be specifically enforced, in the absence of countervailing equities, if the agreement was: clearly intended by the parties to be final on the subject of interspousal support; fair and reasonable at the time of entry of the judgment of divorce nisi; and not the product of fraud or coercion. *Knox* v. *Remick*, 371 Mass. 433, 437 (1976). *Stansel* v. *Stansel*, 385 Mass. 510, 514-515 (1982). See also *Rosenberg* v. *Lipnick*, 377 Mass. 666, 672 (1979); *Osborne* v. *Osborne*, 384 Mass. 591, 599 (1981). "Countervailing equities" may include a probability that a former spouse will become a public charge without increased support, the failure of a former spouse to comply with provisions of the separation agreement, or some other equally compelling circumstance. *Knox* v. *Remick, supra* at 437. *Stansel* v. *Stansel, supra* at 514-516. See *Binder* v. *Binder*, 7 Mass. App. Ct. 751, 758 n.3 (1979).

"An agreement to fix a spouse's support obligation for minor children stands on a different footing. Parents may

not bargain away the rights of their children to support from either one of them." *Knox* v. *Remick, supra* at 437; *Ryan* v. *Ryan*, 371 Mass. 430, 432 (1976). Although a probate judge, insofar as possible, should honor an informed agreement between the parties on the division of financial responsibility for children, the judge may alter child support obligations where "(a) a support order would be entered or modified, as the case may be, in the absence of such an agreement *and* (b) the level of available support for the child[ren] is inadequate in the circumstances because one former spouse is incapable financially of meeting his or her obligation for child support expressed in that agreement" (emphasis supplied). *Knox* v. *Remick, supra* at 437-438. See *Dawson* v. *Rogers*, 7 Mass. App. Ct. 351, 355 n.5 (1979).

Nothing in the record before us justifies the judge's refusal specifically to enforce the separation agreement with respect to either interspousal or child support.[5] The judge's finding that the agreement is unfair and unreasonable, hence unenforceable, is clearly erroneous.[6] The agreement is a carefully drawn document which represents the results of a negotiated settlement between the parties.[7] Cf. *Fried*

---

[5] Because we decide that neither an interspousal nor a child support order in excess of the amount fixed in the agreement was justified on the record, we do not decide whether, where an enforceable separation agreement provides for a single unallocated support payment including both interspousal and child support, the probate judge must determine the allocation intended by the parties before acting on a petition for either interspousal or child support in excess of the amount fixed in the agreement.

[6] The relevant inquiry is whether the agreement was "fair and reasonable *at the time of entry of the judgment nisi*" (emphasis supplied). *Knox* v. *Remick*, 371 Mass. at 436-437. *Stansel* v. *Stansel*, 385 Mass. at 514. The judge does not make any reference to time in his finding. We review the finding assuming that the judge assessed the fairness and reasonableness of the agreement at the time of entry of the judgment nisi.

[7] E.g., the provision requiring Richard to pay for one half of capital improvements on the marital residence was included at Laura's request. We also note that the parties were separated for several years before they adopted this agreement.

v. *Fried*, 5 Mass. App. Ct. 660, 664 (1977). The parties declare in the agreement that each voluntarily entered into the agreement after being fully apprised of all relevant facts and advised on all relevant legal rights and liabilities by independent counsel of choice. *Stansel* v. *Stansel, supra* at 514-515. Nothing in the record casts doubt on the veracity of those declarations.[8] Cf. *Stansel* v. *Stansel, supra* 515. There is neither allegation nor evidence of fraud or coercion in the agreement's adoption. Nothing in the agreement offends against public policy.

The agreement provides for: several years of interspousal support to a woman who, at the time of the divorce, had completed one and one half years of business education, had held a license as a stock broker, was less than fifty years old, and was fully able to work full time; monthly child support of $166.67 for each child, medical insurance and $12,000 toward college tuition for each child; insurance that mortgage payments on the marital residence will be met; and an even division of the marital property (the marital residence) after the emancipation of the children.[9] Such an agreement, adopted with full knowledge of all relevant facts after independent legal advice[10] and extended opportunity for reflection, cannot be deemed unfair or unreasonable. See *Stansel* v. *Stansel, supra* at 514-515. See also *Schillander* v. *Schillander*, 307 Mass. 96, 97-98 (1940). Evidence that one party might have struck a better deal does not render the agreement unfair or unreasonable.

[8] We note that the probate judge limited both counsel in their attempts to elicit testimony from Laura bearing on these declarations, apparently considering such testimony irrelevant.

[9] It is reasonable to conclude that the probate judge who entered the divorce judgment without provision for alimony, child support, or property division considered the separation agreement referred to in the judgment to be adequate on these matters. Cf. *Surabian* v. *Surabian*, 362 Mass. 342, 346 n.5 (1972).

[10] We note that Laura's counsel on this appeal is not the attorney who represented her when the separation agreement was signed or who prepared the complaint for modification.

No countervailing equity sufficient to preclude enforcement of the agreement with respect to interspousal support is alleged or demonstrated. Laura does not allege that she is in danger of becoming a public charge, nor is there any evidence in the record which would support such an allegation. Laura does not allege that her former husband has failed to comply with any provision of the agreement. The evidence would directly contradict such an allegation. The judge did find a "material change of circumstances" perhaps sufficient to justify an order of alimony after a divorce judgment under G. L. c. 208, § 34. However, "something more than a 'material change in circumstances' must be shown before a judge of the Probate Court is justified in refusing specific enforcement of . . . [a valid separation] agreement." *Stansel* v. *Stansel, supra* at 515.

Nor is there any indication in the judge's findings or the record that, in the absence of the agreement, entry or modification of Richard's child support obligation would be warranted in the best interests of the children, G. L. c. 208, § 28, or that "the level of available support for the child[ren] is inadequate," *Knox* v. *Remick,* 371 Mass. at 437-438.

The probate judge erred in refusing specific enforcement of the separation agreement with respect to interspousal support and child support. Accordingly, the judgment is reversed and the complaint is dismissed.

*So ordered.*