JANIS R. FREDERICK *vs.* DONALD G. FREDERICK.

No. 88-P-1289.

Hampshire. December 4, 1989. - October 2, 1990.

Present: WARNER, C.J., ARMSTRONG, & JACOBS, JJ.

*Divorce and Separation,* Division of property, Alimony, Attorney's fees.

In the circumstances of a divorce proceeding, there was no error in the
   judge's orders with respect to limiting the husband's alimony obliga-
   tions to a period of three years, disposition of the marital home, and
   payment of the wife's attorney's fee. [332-335]


COMPLAINT for divorce filed in the Hampshire Division of
the Probate and Family Court Department on July 1, 1987.

The case was heard by *Sean M. Dunphy,* J.

*Wendy Sibbison* for Janis R. Frederick.

*Linda S. Fidnick (Carol Booth* with her) for Donald G.
Frederick.

ARMSTRONG, J. The parties to this divorce had been
friends from high school. They married during the husband's
service in the army as a paratrooper in the Korean conflict.
The "G.I. bill of rights" provided money for the husband's
tuition and expenses for college and for postgraduate work,
and the wife worked in the early years of the marriage in
clerical and bookkeeping jobs, furnishing most of the income
for living expenses (the husband's jobs in this early period of
the marriage were sporadic and part-time). When the hus-
band had his first full-time teaching job, a daughter was
born, and the wife left the job market. A son was born three
years later. After holding a series of teaching positions in the
Midwest, the husband became a full professor of business ad-
ministration at the University of Massachusetts in Amherst,
where the couple bought land and built a house that was
their principal asset when they separated in 1980.

By that time the children were emancipated, or nearly so. (The daughter was working and was soon to marry; the son, then nineteen, was about to join the Marines.) The wife had not reentered the job market, although she had done occasional volunteer work as a receptionist and as a "resource and referral" person for a charitable organization. As the demands of motherhood had lessened, she had taken courses, usually two per year, which had led to a B.A. in psychology but not to a career. Having finished the building years of their marriage, the parties grew to have little in common, and the wife found the husband's excessive drinking, especially on weekends (it apparently never interfered with his job performance), increasingly intolerable. Thus, when the husband accepted a full professorship of business administration at the University of South Carolina, the wife declined to go with him and remained in Amherst.

At first the husband forwarded $1,600 per month for running the Amherst home. In 1982, the wife's mother died, and the wife moved to Gatlinburg, Tennessee, to help an elderly aunt care for the aunt's ailing spouse. The aunt, who has financial means (the record does not permit quantification), renovated a pool house into an apartment for the wife's use. The wife used a $5,000 bequest from her mother, together with a loan of $2,000, to create a basement apartment in the Amherst home. She rented the main house to tenants, at first for nine months of the year (she would spend summers in Amherst), but later, by the time of the divorce trial in 1988, year-round. The basement apartment was occupied by the son, now out of the Marines and earning $20,000 per year, without payment of rent. The son takes care of routine chores such as lawn mowing and snow removal; he does not do skilled maintenance work. When the wife started to receive rental income, the husband reduced his monthly payment to $1,100.

This was basically the situation the parties found themselves in when the case was tried, thirty-five years after the marriage, eight years after the separation. The husband had overcome his drinking habit after the scare of a swollen liver

in 1985. He was head of his department at the University of South Carolina, being paid for this an additional twenty-five percent over his base pay of $63,000. Together with grant money, he was earning $85,000 per year. His pension rights (the pension will apparently be calculated on his base pay) are stipulated to have a "future value" of $100,000. (Certain testimony suggests that by "future value" they mean present value of pension to be received in the future.) He continues to send his wife $1,100 per month. He owns no house (other than his share of the Amherst house) and pays rent of about $360 per month. His other living expenses are somewhat higher than would be expected. He does not cook, and eats out substantially all the time. He is diabetic and is faithful to the eating regimen for that ailment. His savings are negligible. His assets are his earning power, his prospective pension, and his share of the Amherst house. (The house is valued at $200,000, with an equity of $177,000.) He will also receive Social Security on retirement. He was fifty-five at trial.

The wife, also fifty-five, had a cancerous lung removed in 1978 but has had no recurrence of the cancer and now plays tennis several times a week. She continues to live in Gatlinburg, semi-employed as (in the judge's words) "a companion, driver, shopper, and housecleaner" for her aunt. (The ill uncle is now in a nursing home.) She has no expenses for housing, and she has use of the aunt's car. Her own car is used by her daughter, who has been married and divorced and now lives in Gatlinburg. The wife eats most lunches out, either with her daughter or with her aunt. Thus, in the years since the separation, the judge found, "Mrs. Frederick's support from her husband and from her aunt and her rental income has enabled her to live a comfortable life in Gatlinburg . . . . She has been able to play tennis regularly, socialize, and become involved with community activities."

The aunt has signed a deed giving her house to the wife and the wife's sister, but the deed has not been recorded. The wife's sources of income are the $1,100 monthly from her husband and the net rental from the Amherst house, which she estimates at about $280 per month. (The rent is $800,

and the mortgage payments, taxes, and insurance total $418 monthly; the judge thought the repairs and maintenance figure was exaggerated but accepted it for purposes of decision.) Her medical insurance is provided by the husband. She will be eligible for Social Security through her husband's contributions.

The judge, in his findings, indicated that he regarded the wife as underemployed, as not having been wholly forthright about the support she has been receiving[1] and the inheritance she can expect to receive[2] from the aunt, and as having voluntarily limited her income and augmented her expenses by her generosity to the children.[3] Finding her weekly financial need to be $200 and her weekly net rental income to be $65, he ordered that the husband continue to pay alimony of $1,100 per month but limited the obligation to a three-year period from the date of judgment. He ordered that the husband convey his interest in the Amherst house to the wife forthwith but ordered that she pay him $25,000 upon sale of the house or, if it should not be sold, three years from the date of judgment. The husband was ordered to pay $2,000 towards the wife's counsel fees — then calculated at $3,283.[4]

---

[1]The judge referred particularly to an item in the wife's financial statement listing a liability to the aunt of $20,000. The evidence was that the aunt had put a bank account of that amount in joint names with the wife, who, when her sister needed a loan of $10,000, prevailed on the aunt to liquidate the account, giving the proceeds to the wife, who lent the $10,000 to her sister. The sister, in turn, gave a note to the wife for the same amount, payable out of the first inheritance she should receive. The wife gave the aunt a note for $20,000, which the judge found was to reassure the aunt that the money would be available if she should ever need it. The judge also found that the $20,000 would in all likelihood never have to be repaid and that listing it as a liability was misleading.

[2]Here the judge referred particularly to what he regarded as the wife's curt and evasive responses to questions intended to probe this area, and he drew the inference that the wife regarded her expectancy as "none of the Court's business."

[3]The judge referred particularly to the son's free rental of the basement apartment in Amherst, the daughter's regular use of the wife's car, the wife's payment of health insurance for the daughter, and the wife's picking up the bill for frequent weekday lunches with the daughter.

[4]These were the fees of trial counsel, who is not appellate counsel.

The case is before us on the wife's appeal. The issue principally argued is the cutoff of alimony at three years, a reduction of income which, the wife contends, will, as a practical matter, force her to sell the house to provide for her income needs and for the $25,000 ordered paid to the husband. Marshaling statistical evidence of the difficulties that older women, long out of the job market, have in finding employment other than menial, the wife envisions herself after three years forced into degrading work, shorn of the security of owning her own home, possibly never to realize the expectancy that could restore her station in life to a level appropriate for the wife of a university professor.

The judge, it is true, contemplated the wife's seeking employment and selling the Amherst house. He envisioned the wife's possible return to Amherst, living in the marital home, working, and supplementing her income by renting the basement apartment. (The advantage the judge mentioned was the tax saving the wife might realize by reestablishing the house as her principal residence before selling.) Three years' alimony, the judge felt, would be reasonable to effect the necessary changes. Alternatively, if she chose to remain in Gatlinburg, she could sell the Amherst home and invest the proceeds to have available at such time as her services were no longer required by her aunt. Either scenario seems unattractive to the wife: the proceeds of the sale would only generate. (on a use-of-income-only basis) income approximately enough to replace the lost alimony, and she would have lost her home, forcing her into the rental market.

The judge did not, however, mandate sale of the house, nor was that the inevitable effect of his judgment. Contrast *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 818 (1985). The wife's income needs are modest, because of a living situation that provides her with housing, a car, and some meals without cost. The judgment requires the husband to continue providing her medical insurance. The wife has the ability, as the judge pointed out, to realize more income from the Amherst house by renting the basement apartment. During the three-year period of $1,100 alimony, the wife's income will exceed

her needs substantially, enabling her to save the greater part of the $25,000 payment due in three years, or alternatively, if she wishes to finance that payment by mortgage financing (the record is silent as to the payoff date of the existing mortgage), enabling her to stretch out the period of time during which her own resources (exclusive of sale of the house) will meet her income needs. Moreover, the judge's finding that the wife is underemployed in her work for the aunt suggests that the wife could, if necessary, look for part-time employment, consistent with her clerical or bookkeeping skills, which could furnish the modest supplement necessary to meet her long-term income gap. This assumption, because of its peripheral and contingent role in the wife's total financial picture, does not violate the caution expressed in such decisions as *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 15-17 (1979); *Grubert* v. *Grubert*, *supra* at 820-821; *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 622 n.14 (1987); *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 610-611 (1990); *Barron* v. *Barron*, 28 Mass. App. Ct. 755, 758-759 (1990), against relying unduly on the income-earning potential of a wife and mother who has been out of the regular job market for decades.

The judge also properly factored in the likelihood that the wife will later come into a substantial inheritance from her aunt, see *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 374-375 (1985), obviating the need to work indefinitely. On the evidence before the judge, that was a reasonable assumption, but if, in fact, the inheritance should fail to materialize — as, for example, if the estate should have to be depleted for medical expenses of the uncle and aunt prior to their deaths — the fact that it was manifestly an assumption of the judgment would permit reconsideration of alimony at a later time, based on the change in circumstances from those anticipated. *Bak* v. *Bak*, 24 Mass. App. Ct. at 622. *Gordon* v. *Gordon*, 26 Mass. App. Ct. 973, 975 (1988). The same would probably be true if the wife were to lose the advantage of her low-cost living situation with the aunt. We recognize that this disposition casts on the wife the burden of proving

the change of circumstances, should it occur; but it was not unreasonable for the judge, taking into account the reluctance of the wife to disclose the details of the financial support she receives or can expect to receive from the aunt (see *Grubert* v. *Grubert*, 20 Mass. App. Ct. at 822), to reflect that it would be more difficult for the husband than for the wife to produce the evidence which would warrant a modification of the judgment based on a change of circumstances in this regard.

The judge was required to do equity also to the husband, who finds himself ten years from normal retirement age with no substantial asset other than his prospective pension and the $25,000 he will realize three years after judgment as his share of the Amherst house. While his income is presently substantial,[5] he has few earning years remaining in which to accumulate a substantial asset, such as a house. In three of those years he must pay alimony.

The order that the husband pay roughly two thirds of the wife's attorney's fee was reasonable, given the husband's superior cash flow. There was no error in the judge's refusal to order the husband to assume the entire fee. The same principles should apply to the wife's counsel fee and expenses on appeal. The appeal, although not successful, was not frivolous. The husband should be ordered to pay two thirds of the amount the judge, on motion after rescript, deems a reasonable fee.

*Judgment affirmed.*

---

[5]The husband's salary would revert to $63,000 if he should fail to be reappointed as department head. Department heads are appointed, according to the husband's testimony, for three-year terms.