Susan R. Kelley vs. Leroy J. Kelley, Third.

No. 04-P-1341.

Norfolk. May 9, 2005. - October 11, 2005.

Present: Kantrowitz, Smith, & Doerfer, JJ.

*Divorce and Separation,* Modification of judgment, Alimony, Attorney's fees. *Practice, Civil,* Attorney's fees, Costs.

In an action on a husband's complaint for modification of a divorce judgment, the judge abused his discretion in reducing the husband's alimony obligation based on the judge's determination that the wife, a self-employed artist, was underemployed, where there was no evidence of a material change in circumstances in the wife's income or earning capacity since the entry of the earlier judgment, especially against the backdrop of the husband's improved financial situation, and even in light of the wife's reduced monthly expenses [738-742]; likewise, the wife was entitled to counsel and expert fees and costs [742-743].

Complaint for divorce filed in the Norfolk Division of the Probate and Family Court Department on May 7, 1999.

A complaint for modification, filed on March 5, 2003, was heard by *Robert W. Langlois,* J.

*Donald G. Tye (Peter A. Kuperstein* with him) for Susan R. Kelley.

*Daniel R. Seigenberg* for Leroy J. Kelley, Third.

Smith, J. Susan R. Kelley (wife) appeals from a judgment entered on Leroy J. Kelley's (husband) amended complaint for modification reducing the husband's alimony obligation.

The parties were married on March 18, 1984, and during the course of their marriage had three children: Brian, born February 18, 1987, and twins, Erin and David, born February 1, 1994. After a trial, the parties were divorced on December 22, 2000. Pursuant to the judgment of divorce, the husband was ordered to pay the wife a weekly sum of $1,025, allocated as

follows: $425 per week for the support of the unemancipated children, and $600 per week as alimony. The husband did not appeal.

On March 5, 2003, the husband filed a complaint for modification, seeking the elimination of the order of alimony and asking the judge to review the child support order in accordance with the Massachusetts Child Support Guidelines. The grounds for the modification, according to the husband, were that he experienced a decrease in his income and that he now pays health insurance for the wife and the children. After a trial, a Probate Court judge, who had presided at the divorce trial, reduced the amount of alimony paid by the husband by $200 per week; the child support payments remained the same.

On appeal, the wife claims that the judge committed error in reducing the alimony payments where there was no evidence of a material change in circumstances, and that the judge erred in denying her motion for counsel and expert fees and costs. We agree.

1. *Background.* In the judgment of divorce nisi,[1] the judge, in fashioning the alimony order, noted that the wife was an artist who stayed at home to care for the parties' children. The judge found that "[t]he need for the Wife, in the years to come, to tend to the day-to-day needs of the parties' children (particularly the young twins) will affect and impact her ability to obtain regular, gainful employment. In that regard, the Wife's avocation (painting) will hopefully result in her realizing some reasonable income in the coming years, although it has certainly not done so to date. If she is unable to earn even a modest amount of money from her artistic endeavors within the next few years, if not sooner, she will have to rethink the efficacy of such a career as a means of improving her standard of living. However, given the ages of the parties (late 40s), their employment histories and prospects, and their family responsibilities, it is

---

[1]The original judgment of divorce nisi, dated December 22, 2000, was amended on January 30, 2001. We refer to the original judgment, as amended, as the judgment. On October 17, 2001, the parties entered a modification agreement, incorporated into a modification judgment, which dealt with property division.

likely that alimony of some amount will be paid by the Husband through his normal retirement."[2]

a. *The modification hearing.* The trial on the husband's complaint for modification was held on September 22, 23, and 24, and October 8 and 14, 2003. At the conclusion of the trial on October 14, the judge allowed the husband to amend his modification complaint to include the issue of the wife's earning capacity. The judge stated, "[W]e are going to have a further hearing in this case solely addressing the issue of [the wife's] earning capacity, earning potential, as of the present time. Now, if it hasn't changed, it hasn't changed." He further explained, "[I]f she has an earning potential that hasn't been realized over the last several years and that her circumstance is such that she could have the earning capacity where's perhaps before she could not, that may be a significant change of circumstances that warrants review of the order." The judge emphasized that the husband could not simply assert, "[W]ell, Judge, we think you should find that she can earn more." He warned, "[T]hat's not going to cut it." The judge continued the matter to November 24, 2003, at which time the only issue was to be the wife's earning capacity.

At the time of the hearing on November 24, 2003, the wife was fifty years old, and her children, who lived at home, were ages sixteen and nine. The husband essentially sought to prove that the wife was an unsuccessful artist who could make substantially more income if she sought alternative employment. The record demonstrated that the wife grossed $6,395 from her artwork in 2001, and $11,204 in 2002. Her tax returns also indicate that she had a net loss of $17,713 in 2001, and $20,731 in 2002.

The wife testified at the hearing. When asked how many hours she paints every day, she stated that "I paint around the

[2]We note that the wife's earning capacity also factored into the judge's division of marital assets. The judge wrote, "[t]he Husband's receipt of his interest in the marital home was ordered deferred for several years for several reasons, but principally to allow their oldest child to remain in th[ese] present circumstances until he graduates from high school and, additionally, to enable the Wife[] and the children to reside, at greatly reduced expense, where they currently reside until the Wife is, presumably and presumptively, able to be[gin] to earn a reasonable, albeit modest, amount of income."

kids' schedules, so it's different every day. . . . I try to do something just about every day of the week." She testified that she received income from selling her paintings, as well as teaching painting classes.[3] The wife acknowledged that in the previous six years, her income as an artist never exceeded her expenses. She expressed hope, however, that she would earn a profit in 2003.

The wife attended Framingham State College during the 1970's, but did not have a college degree, and she obtained a real estate broker's license in 1978, which was not currently active. She testified that she is not interested in renewing her broker's license, stating that "I don't feel that you can do that with children; it's nights and weekends, and the child care . . . you don't get paid to sit in the real estate office, you can't pay a sitter." The wife described her parenting obligations, which included driving her three children to a number of different after-school activities such as golf, karate, horseback riding, and skating lessons.

Both parties presented expert testimony concerning the wife's employability. The experts reviewed her "background [to] determine if there were jobs in the economy today that, based upon her prior education and vocational experience, she could fulfill." The husband's expert explained that "[a]vocation is what one likes to do. Vocation is what one can do where they would have the highest earning capacity." Although he never interviewed the wife, he testified that "looking at labor market projections and wage date, [becoming a] real estate agent would provide, for her, the greatest salary." The expert acknowledged that his report did not reference the "fact that [the wife] is 50 years old and has three children over whom she's primary physical custodian."

The wife's expert considered "her background, her training, her experience, [the] various work that she has done, both volunteer and regular, and also took a look at what, in fact . . .

---

[3] The wife testified that she gets paid approximately thirty to thirty-five dollars per hour to teach painting workshops. She also testified that when she first started to sell her paintings, they sold for fifty to one hundred dollars. At the time of the hearing, the average selling price of her paintings was $500 to $2,000.

she want[s] to do as far as the future is concerned." He testified that the wife "wants to be an artist and that's the way to make money in the future for her," but he concluded that at the present time, she could receive more money in "office and administrative support areas."

b. *The judge's ruling on the husband's claim for reduced support payments.* At the conclusion of the hearing, the judge ruled that there was no credible basis in the evidence to reduce the support payments based on the reason stated in the modification complaint, i.e., the husband's claim of reduced income. In that regard, the judge scolded the husband, stating:

> "The [husband] has an earning capacity that is significantly beyond that which he reports on his financial statement as being his salary. . . . [T]he [husband] has not sustained his burden of proving that he has sustained significant negative financial changes in his circumstances vis-a-vis the circumstances that existed as of the time of the parties' December, 2000 divorce. This Court does not question that the [husband] may be experiencing some financial belt-tightening, but his *reported* income has actually increased over the nearly three years since the entry of the divorce judgment.[4] The [husband] can not claim that his transfer of his various corporate and/or real property interest to his mother has had a negative effect upon the income which now he receives, as he did not declare any income from those interests as of the time of the divorce.[5] Further, his recent actions have, in light of his mother's obvious

---

[4] At the time of the divorce trial, the husband reported weekly income of $1,154, and at the time of the trial on his modification complaint the husband reported an income of $1,205.

[5] The judge was referring to the following conduct of the husband and his mother prior to the husband's filing of his modification complaint. At the time of the divorce trial, the husband, a podiatrist, owned a beneficial interest with his mother, a retired podiatrist, in Norwood Podiatry Associates (NPA). He also reported at the divorce trial that he held an interest, either directly or through a trust, in four pieces of real property.

After the divorce and before the husband's modification complaint was tried, the husband's mother hired, at NPA's expense, an attorney to commence what the judge called a "friendly" suit against the husband in the Superior Court to recover money she claimed that she loaned him. The matter was settled by the husband conveying to his mother all of his holdings in NPA and the trusts that owed real estate in Norwood and Needham. The mother plans

intentions to return all such assets to him at a future date, served only to defer his receipt of such income-producing (and presumably, by that time, appeciated) assets; he is therefore, asking the Court to reduce his present support obligations in order to allow his future assets to be protected, preserved and enhanced — all at the expense of the [wife] and the parties' three unemancipated children, whom he is obligated to support."

The husband did not appeal the judge's decision.

c. *The judge's ruling on the husband's request to eliminate alimony.* After hearing the evidence as to the wife's earning capacity, the judge ruled that she had an earning capacity of $500 per week and "should be expected to perform some gainful employment rather than have [the husband], essentially, being required to subsidize her avocation and, thus, her lifestyle." The judge reduced the alimony award to $400 a week, stating that in regard to the wife's career as an artist, "[s]ince [the wife] has not 'rethought the efficacy of such a career' she is now, essentially, be[ing] ordered to do so. She had been given an appropriate and reasonable period of time within which to determine if her career as an artist could prove to be financially worthwhile; it has not proven to be so."

The judge stated, "Given her positive characteristics . . . she would, more likely than not, be eligible for, and desirous of receiving, increased responsibility, with attending increased compensation, in any occupation, even a clerical one." Furthermore,

> "[i]f she is able to develop her avocation to the point where she can net an amount in excess of what she can earn from third-party employment, she could either chose to continue with her avocation on a full time basis or continue to work at both, to her benefit."

2. *Discussion.* a. *Wife's underemployment.* The wife argues that it was an abuse of discretion for the judge to reduce the amount of alimony based on his determination that she is underemployed.

___

to leave her interest in NPA and in the real estate to the husband when she dies.

General Laws c. 208, § 37, authorizes a Probate Court judge to modify judgments for alimony at the request of either party. "Although the power of a Probate Court to modify an alimony judgment under G. L. c. 208, § 37, is 'broad and general,' it has nevertheless been held 'repeatedly . . . that *no modification can be made unless the party seeking modification shows a change of circumstances since the entry of the earlier judgment*" (emphasis added). *Binder* v. *Binder*, 7 Mass. App. Ct. 751, 754 (1979). See, e.g., *Bush* v. *Bush*, 402 Mass. 406, 411 (1988). On the basis of the record before us, we conclude that no such change in circumstances was proven.

"In determining whether to modify a support or alimony order, a probate judge must weigh *all relevant circumstances*" (emphasis added).[6] *Schuler* v. *Schuler*, 382 Mass. 366, 370 (1981). See *Bush* v. *Bush, supra.* Here, the judge heard testimony from the husband, his mother, the wife, and two vocational experts. "There is no inflexible rule constraining the judge's deliberation of the equities of a modification petition. The balance may shift according to the facts of each case." *Heistand* v. *Heistand*, 384 Mass. 20, 27 (1981) (citation omitted). On appeal, "we will not substitute our judgment for that of the trier of fact. We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts." *Iamele* v. *Asselin*, 444 Mass. 734, 741 (2005), quoting from *C.O.* v. *M.M.*, 442 Mass. 648, 655 (2004).

Based upon our review of the record, we conclude that it was an abuse of discretion for the judge to reduce the alimony award in the absence of any evidence of a material change in circumstances regarding the wife's income or earning capacity,

---

[6]"The occupation, vocational skills, and employability of the parties must be considered when awarding alimony. G. L. c. 208, § 34. The evaluation of vocational skills takes into account a party's age, health, and reasonable employment prospects." *Heins* v. *Ledis*, 422 Mass. 477, 484 (1996). General Laws c. 208, § 34, as appearing in St. 1989, c. 287, § 59, which authorizes the award of alimony, states that "[i]n determining the amount of alimony, if any, to be paid . . . the court . . . shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income."

especially against the backdrop of the husband's improved financial situation, and even in light of the wife's reduced monthly expenses. Compare *Fugere* v. *Fugere*, 24 Mass. App. Ct. 758, 760 (1987) (balancing emancipation of child and wife's modest increase in income against husband's improved financial situation and wife's higher expenses to determine that there was no material change in circumstances, and thus it was an abuse of discretion to reduce alimony payments), with *Winternitz* v. *Winternitz*, 19 Mass. App. Ct. 228 (1985) (judge acted within discretion to eliminate unallocated support award where child was no longer a minor and not living at home, and wife had inherited a substantial sum of money and had a significantly greater income). See *Mead* v. *Mead*, 2 Mass. App. Ct. 338, 339-340 (1974) (no change in circumstances to support modification, especially in light of evidence that husband's financial position improved since the divorce). See also *Binder* v. *Binder*, 7 Mass. App. Ct. at 756 (amount of wife's savings due to divorce settlement and wife's "frugal habits").

The proper focus of the modification inquiry must be whether there has been a material change in circumstances. We emphasize that the judge acknowledged, during the hearing, that the wife's "*income really hasn't changed significantly*, for whatever reason" (emphasis added). No evidence was presented to the contrary. The judge also instructed the husband's counsel that the husband could not simply assert, "[W]e think you should find that she can earn more." The judge plainly stated, "[T]hat's not going to cut it."

It would appear that the judge's decision was not based on changed circumstances, but rather on his belief that the wife's painting was merely a hobby and that she could earn more money doing something else other than being an artist. We agree that individuals are often capable of earning more money than they presently do, but career choices are influenced by a number of factors, including family, education, training, and personal interests, factors that were considered by the judge in the divorce action.

From the time of the 2001 divorce trial, the judge was critical of the wife's chosen career path. We note that the judge in his decision to reduce alimony referred to the wife's career as an

"avocation," rather than a vocation. The distinction is subtle, yet reflects the judge's personal disapproval, for as the husband's expert explained, *"avocation is what one likes to do. Vocation is what one can do where they would have the highest earning capacity."* (Emphasis added.)

After testimony concluded on the issue of the wife's earning capacity, the judge commented, "I'd love to be a professional golfer." He told the wife, "[Y]ou may be a fine artist, but the term . . . 'starving artist' exists for a reason. . . . You can't keep losing money, ma'am. If you want to, that's your business, but he's not going to subsidize [your avocation]."

We think that the record before the judge demonstrates that the wife's career as an artist was not a hobby, as the judge thought, but rather a business. The wife filed Internal Revenue Service Schedule C with her annual Federal income tax return, which is the form for self-employed persons. She taught painting at workshops, see note 3, *supra*, and she sold her paintings at prices that had increased over the years.

In the proper circumstances, "[a] judge is not limited to a party's actual earnings but may . . . consider potential earning capacity." *Heins* v. *Ledis*, 422 Mass. 477, 485 (1996). The issue of attributing income most commonly arises when a judge determines that a support provider is voluntarily earning less than he or she is capable of. See *Schuler* v. *Schuler*, 382 Mass. at 374 (relying upon "the general rule that where the support provider is earning less than he could with reasonable effort, the trial judge may consider potential earning capacity rather than actual earnings"). Less frequently, we have attributed income to a support recipient when considering a complaint for modification. See *Frederick* v. *Frederick*, 29 Mass. App. Ct. 329, 332 (1990), where the court held that alimony could be eliminated in three years where the wife, who worked for her aunt, was underemployed, and where she had not "been wholly forthright about the support she has been receiving and the inheritance she can expect to receive . . . and . . . [had] voluntarily limited her income." Those circumstances are not present in this matter.

More common, however, is the caution expressed "against relying unduly on the income-earning potential of a wife and

mother who has been out of the regular job market for decades."
*Id.* at 334, citing *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 15-17
(1979). See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 820-
821 (1985); *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 610-
611 (1990) (in long-term marriage, not appropriate to focus on
"full-time earning capacity of the wife and penaliz[e] her for
making a decision to be at home"); *Barron* v. *Barron*, 28 Mass.
App. Ct. 755, 758-759 (1990). Such caution is appropriate in
this case, where the wife has dedicated herself and expressed
commitment to her vocation as an artist, whether or not she
could earn more money in a clerical position.

We hold that the judge committed error in reducing alimony
where there was no material change in circumstances.

b. *Denial of wife's request for fees and costs.* The wife claims
that the judge abused his discretion when he denied her request
for attorney's and expert's fees and costs.

We recognize that the judge had discretion to award counsel
fees but is not required to do so. See *Cooper* v. *Cooper*, 62
Mass. App. Ct. 130, 141 (2004), citing G. L. c. 208, § 38.
Cf. *O'Meara* v. *Doherty*, 53 Mass. App. Ct. 599, 606-607
(2002). In this matter, the judge ruled that the husband's original
modification complaint was without merit, as the husband's
income at the time of the complaint had actually increased over
the income he had reported at the time of trial on the modifica-
tion complaint. As the result of the filing of the modification
complaint, the wife was required to finance attorney's and
expert's fees in connection with extensive discovery, court ap-
pearances, and preparation for a trial defending against the
husband's claim that his income had decreased, a claim that the
judge ruled was entirely without merit.

Further, "[t]he trial of a case is not to be converted into a
game of hide and seek." *Crowe* v. *Fong*, 45 Mass. App. Ct.
673, 678-679 (1998), quoting from *Hillery* v. *Hillery*, 342 Mass.
371, 375 (1961). The wife had to expend considerable counsel
fees and costs in a response to the husband's attempt not only
to misrepresent his income but also to engage in conduct
whereby he transferred assets to his mother, assets which will
sometime in the future return to him. In the circumstances
present in this matter, we hold that the wife is entitled to at-

torney's and expert's fees and costs, in connection with the proceedings below, in an amount to be determined by the judge.

3. *Conclusion.* The portions of the judgment dated November 28, 2003, that reduce the alimony award to the wife and deny her request for attorney's and expert's fees and costs in connection with the proceedings below are reversed, and the matter is remanded to the Probate Court for a determination of the amount of those fees and costs.

The wife has requested her attorney's fees and costs in connection with this appeal. She "may . . . submit [her] petition for [appellate] fees together with the necessary back-up material and details as to hours spent, precise nature of the work, and fees requested," *Yorke Mgmt.* v. *Castro,* 406 Mass. 17, 20 (1989), to this court within fifteen days of the issuance of the rescript in this case. See *Larson* v. *Larson,* 28 Mass. App. Ct. at 343, 344.

*So ordered.*