After a two-phase trial before a special master, a Probate and Family Court judge largely adopted the special master's findings of fact, conclusions of law, rationale, and proposed judgment of divorce nisi. In their cross appeals, the parties raise various challenges to the judgment of divorce nisi. We modify, vacate, and affirm various portions of the judgment.
Background. We summarize only those findings relevant to the issues on appeal. K.G.S. (husband) and D.S. (wife) were married on September 11, 1993. The husband served the wife with a complaint for divorce on August 19, 2012. The husband and his business partner had mutual business interests in fifty-five business entities.[2] The husband and wife have substantial assets and real property holdings, with various mortgages and rental and investment incomes.
On December 10, 2014, before any evidence was taken at trial, the husband and the wife entered into a business asset stipulation (BAS), eliminating the valuation of the husband's business assets as an issue. The BAS provided that (1) the husband's business interests were valued at $ 7.2 million, (2) the wife was entitled to one-half ($ 3.6 million), (3) the husband would pay the wife her share within seven and one-half years of the judgment of divorce nisi, and (4) the wife's share would not be affected by the husband's liabilities.
After the trial, the special master issued an eighty-nine page report containing findings of facts, conclusions of law, rationale, and a proposed judgment of divorce nisi, which was largely adopted by the judge.
The judgment of divorce nisi incorporated the BAS, albeit with modifications determined by the special master (and adopted by the judge) to be necessary in order for it to be fair and reasonable; required the husband to pay alimony to the wife in the annual amount of $ 200,000, until October 31, 2032 (after imputing an annual income of $ 66,860 -- $ 18,200 in salary and $ 48,660 in investments -- to the wife); and ordered the wife to refinance the "existing mortgages" on the property owned by the parties in Woods Hole (which she was awarded). However, the judgment did not order the wife to refinance the mortgages on the marital residence in Dover, which was also awarded to the wife. The Woods Hole property was not encumbered by any mortgages, but the Dover property was so encumbered, and "both parties [were] obligors on the loan."
Discussion. 1. The BAS. In determining whether a marital agreement[3] is fair and reasonable, a judge "should ... consider the entire context in which the agreement was reached, allowing great latitude for agreements reached where each party is represented by separate counsel of their own choosing." Ansin v. Craven-Ansin, 457 Mass. 283, 297 (2010). In determining whether a separation agreement is fair and reasonable, "a judge should consider at least the following: (1) the nature and substance of the objecting party's complaint; (2) the financial and property division provisions of the agreement as a whole; (3) the context in which the negotiations took place; (4) the complexity of the issues involved; (5) the background and knowledge of the parties; (6) the experience and ability of counsel; (7) the need for and availability of experts to assist the parties and counsel; and (8) the mandatory and, if the judge deems it appropriate, the discretionary factors set forth in G. L. c. 208, § 34" (footnote omitted). Dominick v. Dominick, 18 Mass. App. Ct. 85, 92 (1984).
In Ansin, 457 Mass. at 297-298, the court concluded that a marital agreement was fair and reasonable where the wife was represented by "experienced, independent counsel"; she "was to receive a substantial fixed sum payment from her husband"; she would share in a percentage of any increase in value in the marital estate; and "she did not forgo the fixed payment" provided for in the agreement even if the value of the marital estate "declined substantially." In contrast, a finding that a marital agreement was unfair and unreasonable under the Dominick factors was affirmed by this court in Rubin v. Rubin, 29 Mass. App. Ct. 689, 696-697 (1991), where the wife had repudiated the agreement before the entry of the judgment. In Rubin, the wife testified that when she signed the agreement she never intended that it would bind her, the agreement did "not make adequate provisions for child support or alimony," the assignment of property was "inadequate and incomplete," and her husband obtained her assent to the agreement "through a breach of his confidential relationship with her as well as by other unconscionable means." Id. at 696-697. See Brash v. Brash, 407 Mass. 101, 105-106 (1990) (in context of nineteen-year marriage, oral separation agreement transferring all assets to husband was unfair, unreasonable, and unconscionable).
By contrast, a finding that a separation agreement is "unfair and unreasonable, [and] hence unenforceable" is "clearly erroneous" when the finding lacks any basis in the record. Randall v. Randall, 17 Mass. App. Ct. 24, 27-31 (1983). "Evidence that one party might have struck a better deal does not render the agreement unfair or unreasonable." Id. at 31.
Here, after considering the entire context in which the BAS was reached and the Dominick factors, we conclude that there is no basis in the record to support the judge's finding that the BAS was unfair and unreasonable. See Ansin, 457 Mass. at 297.[4] The BAS outlined the value of the husband's business interests ($ 7.2 million); the value of the wife's share of those business interests ($ 3.6 million); the time for payment to the wife; the crediting of the wife's interest in the marital estate with other property; and protection for the wife from the husband's potential liabilities, debts, or payables associated with his business interests. The record before us does not indicate that any evidence was presented to the special master regarding the nature of the husband's business assets.[5]
The issues involved in the BAS negotiations were complex (the BAS schedule listing the names of the husband's business interests alone filled two pages), the structure of his business interests and liabilities was intricate, and the parties had substantial assets. Although the husband plainly had greater knowledge of his business interests than the wife, each party was represented by independent, experienced counsel. Both parties also consulted business valuation experts. See Dominick, 18 Mass. App. Ct. at 92.
The special master acknowledged, and the judge accepted, that the BAS "was the product of negotiation and the various trade-offs and concessions made by each side that are properly beyond [the special master's] knowledge." The wife stood to receive a substantial and equitable lump sum -- $ 3.6 million, one-half of the value of the husband's business interests. Moreover, if the husband incurred any liabilities -- personal or business -- the BAS protected the wife from those losses. See Ansin, 457 Mass. at 297-299. Both parties had ample opportunity to reflect on their decision in the five days between when they signed the BAS and when the special master conducted the colloquy,[6] at which the husband and the wife indicated they signed the BAS freely and voluntarily, on the advice of counsel. In our view, the grounds that formed the basis for the special master's criticism of the BAS fall squarely in the category of a belief that "one party might have struck a better deal." See Randall, 17 Mass. App. Ct. at 31.[7]
Moreover, the BAS provided that it would be binding, not subject to objections, incorporated into the judgment of divorce, and not appealable. "We find nothing in the record to contradict these recitals." Stansel v. Stansel, 385 Mass. 510, 515 (1982). The special master's finding, adopted by the judge, that the BAS was unfair and unreasonable -- and that certain modifications should be made to it to make it fair and reasonable -- was without basis in the record.[8] We conclude that the BAS should be enforced as agreed to by the parties.
2. Support obligations. The husband contends that the judge erred in calculating the duration and amount of the husband's support obligations to the wife. The judge found that "for purposes of maximum duration alimony the length of marriage is 19 years, 11 months, and 8 days or 239.26 months (September 11, 1993 date of marriage to August 19, 1993 [sic ] date of service of divorce complaint)." The judge recognized the relevant dates (date of marriage to date of service of the divorce complaint), see G. L. c. 208, § 48, but made a typographical and a mathematical error. The parties were indeed married on September 11, 1993, but the divorce complaint was served on the wife on August 19, 2012. Therefore, the length of the marriage was eighteen years, eleven months. This length should have been used in calculating the presumptive duration of alimony under G. L. c. 208, § 49. Accordingly, the duration of alimony must be recalculated.[9]
The husband also contends that the judge made mathematical errors in determining the amount of alimony. Specifically, the husband correctly notes that the wife's financial statement dated November 7, 2014, reflected a weekly expense of $ 176.49 for "cash withdrawals," but that the wife's actual weekly cash withdrawal need was $ 250. However, in adjusting the wife's needs, the findings adjusted the weekly cash withdrawal need upward by $ 296.59 (more than her total weekly cash withdrawal need).[10] This adjustment resulted in a mathematical error that affected the alimony award. Because the calculation is "plainly wrong," despite the judge's "considerable discretion" in awarding alimony, Hassey v. Hassey, 85 Mass. App. Ct. 518, 524 (2014), the alimony amount must be recalculated.
The wife also has also raised alimony-related issues in her cross appeal. First, she contends that the judge improperly inflated the income attributed to her in determining the alimony award. Next, the wife contends that the judge acted improperly in awarding alimony based on the wife's need, rather than based on the income differential, because the award "deprived her of the marital station" and gave the husband an "inequitable windfall."
a. The wife's income. The judge found that the wife could earn an annual salary of $ 18,200, based on earning ten dollars an hour with a thirty-five hour work week.[11] The wife challenges this finding based on her age, her time out of the workforce for the family's benefit, her lack of a college degree, and her lack of technical skills. The wife further contends that the income attribution lacked necessary prerequisite findings: that she was underemployed and that employment was available. These arguments are without merit.
The "power to grant alimony" is "wholly statutory." Zaleski v. Zaleski, 469 Mass. 230, 233 (2014). "A judge has broad discretion when awarding alimony under the statute." Young v. Young, 478 Mass. 1, 5-6 (2017), quoting Zaleski, supra at 235. "Furthermore, because the judge has considerable discretion, determinations as to alimony and property division will not be reversed unless plainly wrong and excessive." Hassey, 85 Mass. App. Ct. at 524. "The occupation, vocational skills, and employability of the parties must be considered when awarding alimony. G. L. c. 208, § 34. The evaluation of vocational skills takes into account a party's age, health, and reasonable employment prospects." Heins v. Ledis, 422 Mass. 477, 484 (1996). In determining the form, duration, and amount of alimony, "a court shall consider" numerous factors, including, but not limited to, "income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary." G. L. c. 208, § 53 (a ). A judge may attribute income to a payee spouse, see Kelley v. Kelley, 64 Mass. App. Ct. 733, 741-742 (2005), and "is not limited to a party's actual earnings but may ... consider potential earning capacity" for attribution of income. Emery v. Sturtevant, 91 Mass. App. Ct. 502, 509 (2017), quoting C.D.L. v. M.M.L., 72 Mass. App. Ct. 146, 152 (2008).
However, as the wife correctly points out, a judge must guard "against relying unduly on the income-earning potential of a wife and mother who has been out of the regular job market for decades." Kelley, 64 Mass. App. Ct. at 741-742, quoting Frederick v. Frederick, 29 Mass. App. Ct. 329, 334 (1990). However, this is not implicated when a judge finds that a wife "could, if necessary, look for part-time employment, consistent with her clerical or bookkeeping skills, which could furnish the modest supplement necessary to meet her long-term income gap," because "[t]his assumption" has a "peripheral and contingent role in the wife's total financial picture." Frederick, supra. See Flor v. Flor, 92 Mass. App. Ct. 360, 363-364 (2017) (affirming alimony award where judge attributed full-time minimum wage job to fifty-nine year old wife who had not worked outside of home for eight years).
Here, the wife has been unemployed since "about 2005" based on a "joint decision of the parties." The special master and the judge found, after considering the statutory factors, that the wife "has the ability to secure employment of 35 hours per week at minimum wage, which is currently $ 10.00 per hour" based on her education, skills, and prior work history earning $ 40,000 as an administrative assistant. This was not erroneous, and it has merely a "peripheral and contingent role in the wife's total financial picture." Frederick, 29 Mass. App. Ct. at 334.
b. The wife's need-based alimony. The wife further contends that the judge acted improperly in awarding alimony based on her need, rather than based on the income differential between the husband and the wife, as the award allegedly deprived her of the marital station and gave the husband a windfall. However, as noted above, a judge has "broad discretion" in awarding alimony based on the statute -- after considering the mandatory factors and any other factors the judge "deems 'relevant and material.' " Young, 478 Mass. at 5, quoting G. L. c. 208, § 53 (a ). The statute provides that "the amount of alimony should generally not exceed the recipient's need or 30 to 35 per cent of the difference between the parties' gross incomes" (emphasis added). G. L. c. 208, § 53 (b ). "Because 'need' is a relative term for purposes of the act, it must be measured in light of mandatory considerations that include the parties' marital lifestyle." Zaleski, 469 Mass. at 243.
Here, the judge considered the parties' needs based on financial statements filed just prior to the joint proceeding, see note 1, supra, and noted that the wife had cut back her expenses "due to lack of sufficient resources to meet them at the same level during litigation." When they were together, "[t]he parties lived a high-income station, which included 3 residences, ... regular travel, entertainment, dining out and the availability of cash to meet obligations." The judge specifically found that the wife "has need for both spousal and child support at a level that meets her needs as measured by the marital station" (emphasis added). The judgment "strives to achieve reasonable continuity of lifestyle, without windfall." The judge awarded alimony based on the wife's need, pursuant to the statute, and measured that need in light of mandatory considerations, including the parties' marital station. Zaleski, 469 Mass. at 243. This was not plainly wrong.
3. Mortgage liability. The husband contends that the judge "erred in requiring [the husband] to remain liable indefinitely on" the Dover mortgage.[12] The Dover property was awarded to the wife. The wife refinanced the mortgage on the Dover property on June 6, 2016, pursuant to a court order, but both parties remained obligors on the loan, and the judgment of divorce nisi ordered the wife to "timely pay all mortgage costs" for "so long as the [h]usband is a guarantor on a mortgage that encumbers the property."
In contrast, the wife was also awarded the Woods Hole property, on which there was no mortgage. Despite the absence of a mortgage on this property, the judgment of divorce nisi provides that the wife "shall refinance the existing mortgages to remove [the h]usband from any obligation for same."[13] "The rationale underlying" the judge's decision here is not "apparent." See Hassey, 85 Mass. App. Ct. at 524. Therefore, we vacate and remand the portion of the judgment related to the Woods Hole and Dover mortgages for further clarification.
Conclusion. The portions of the judgment augmenting the terms of the BAS are vacated, and the judgment shall be modified to provide that the BAS shall be enforced as written. As so modified, those portions of the judgment are affirmed. The provisions of the judgment related to the award of alimony are vacated, and the matter is remanded for recalculation of the amount of alimony and its duration based on the corrected length of the marriage and the wife's cash withdrawal needs. We also vacate and remand the portion of the judgment related to the Woods Hole and Dover mortgages for further clarification. The remainder of the judgment is otherwise affirmed.[14]
So ordered.
Affirmed in part; affirmed as modified in part; vacated and remanded in part.

The husband's business partner was involved in divorce proceedings at the same time as the husband and wife. During an initial stage of the trial, the parties in both divorce proceedings stipulated to evaluate the husband's and the business partner's respective business interests in a joint proceeding.

Marital agreements, which "closely resemble[ ]" separation agreements, are reviewed for fairness and reasonableness with "heightened scrutiny" (as compared to separation agreements) because the "parties to a marital agreement do not bargain as freely as separating spouses do." Ansin v. Craven-Ansin, 457 Mass. 283, 296-297 (2010). This is "[b]ecause a marital agreement is executed when the parties do not contemplate divorce and when they owe absolute fidelity to each other." Id. at 297. Here, the parties and the judge all appear to have treated the BAS as a separation agreement. We use marital agreement cases to demonstrate that the BAS here was fair and reasonable even under the "heightened scrutiny" required for evaluating marital agreements.

We note that the special master appears to have reached his conclusion (later adopted by the judge) in the absence of any objection or request by the wife. Indeed, in her proposed findings of fact and rulings of law, the wife incorporated the BAS by reference without criticism or objection.

The wife's counsel conceded at oral argument that the value of the business interests was fixed by the terms of the BAS and that none of the evidence before the special master or the judge was about the nature of the husband's business assets.

They also had over two years between the initiation of divorce proceedings and the signing of the BAS.

The special master commented as follows: "I find that an interest-free 7 ½ year payout, without any progress payments, and without any interest over so long a period would result in an inequitable windfall to the [h]usband .... It is reasonable to establish a payment schedule and a reasonable interest term." However, there was no evidence in the record before the special master regarding the nature of the husband's business assets. As but one example, illiquid assets, or assets with volatile market values, might warrant preserving (for the benefit of both parties) flexibility regarding the time when it would be advantageous to convert them to cash for purposes of paying the wife's share. Like the special master and the trial judge, we are without information about the nature of the business assets, and we do not presume to conclude that such considerations in fact apply. We offer the examples simply to illustrate the danger of reaching a conclusion that the payment provisions of the BAS were unfair and unreasonable without information about the nature and complexity of the underlying assets.

As a result of our conclusion, we need not consider the husband's argument that the judge's only authority was to accept or invalidate the BAS (as unfair and unreasonable), and not to modify it in the manner recommended by the special master, on the ground that the "BAS is a fully integrated binding contract that cannot be modified or otherwise 'augmented' by the [t]rial [c]ourt."

We leave to the judge on remand to determine whether any credit would be appropriate.

The wife contends that the upward adjustment was correct based on the finding crediting her financial statements from 2011 as a "more reasonable proxy for the parties' standard of living before separation." However, this argument ignores the specific finding, later in the same paragraph, that the wife's cash withdrawal need was $ 250, which was "reduced [from the 2011 amount] to reflect the [h]usband's absence, and the children's absence for a significant part of the year, at college."

We note that, at the time the judgment entered, this amount was less than minimum wage. G. L. c. 151, § 1, as amended through St. 2014, c. 144, § 30.

The husband also contends that the judge erred in requiring the husband to remain liable on the mortgage for another property, but the parties indicated at oral argument that they had resolved this issue and we do not address it here.

The husband brought these incongruous provisions to the attention of the judge in a motion for relief from judgment pursuant to Mass. R. Dom. Rel. P. 60, which was summarily denied. That denial is not before us on appeal.

To the extent that we do not address the parties' other contentions, "they 'have not been overlooked. We find nothing in them that requires discussion.' " Department of Revenue v. Ryan R., 62 Mass. App. Ct. 380, 389 (2004), quoting Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).