CHESTER L. SCHULER *vs.* BEVERLY T. SCHULER.

Middlesex. September 12, 1980. — January 27, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Divorce,* Alimony, Child support, Modification of judgment.

In a proceeding on a husband's complaint for modification of alimony
and support obligations, there was sufficient evidence to warrant a
finding that the husband retained the ability to continue to make the
payments required by the judgment of divorce even though he had suf-
fered a substantial reduction in income as the result of the termination
of his prior employment. [371-373]

In a proceeding on a husband's complaint for modification of alimony
and support obligations, the judge was not restricted in the circum-
stances to a consideration of the husband's actual income at the time of
the hearing but could properly consider his potential earning capacity.
[373-374]

In a proceeding on a husband's complaint for modification of alimony
and support obligations on the ground that he had suffered a substan-
tial reduction in his income, the judge was entitled to take into con-
sideration the husband's assets in determining his ability to make the
required payments. [374-376]

In a proceeding on a husband's complaint for modification of alimony
and support obligations, the judge's refusal to consider the husband's
expenses related to his second wife and child was not error where there
was sufficient evidence to warrant a finding that the husband had the
ability to make the alimony and support payments and to support him-
self and his second family. [376-378]

COMPLAINT for divorce filed in the Probate Court for the
county of Middlesex on May 5, 1976.

A complaint for modification, filed on January 24, 1979,
was heard by *Ginsburg,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Michael H. Riley* for the plaintiff.

*Charles A. Goglia, Jr.,* for the defendant.

QUIRICO, J. The parties in this case were divorced by a judgment nisi entered on May 5, 1976, which became absolute on November 5, 1976. See G. L. c. 208, § 21. A prior written separation agreement was incorporated and merged in the judgment. The agreement required the husband, Chester L. Schuler, to pay the wife, Beverly, $700 a month as alimony and $700 a month as child support.[1] The agreement contained other provisions not relevant here.

On January 24, 1979, Chester, acting pursuant to G. L. c. 208, § 37,[2] filed a complaint for modification of the payments required by the judgment. After a hearing at which both parties testified, the probate judge on June 26, 1979, filed his findings and entered an order dismissing the complaint. Chester appealed, and we ordered the case transferred to this court on our own motion. See G. L. c. 211A, § 10(A). We hold that the judge did not abuse his discretion or otherwise commit error in denying the modification.

At the hearing on the cross complaints,[3] Chester argued that, because of substantial changes in his circumstances since the date of the agreement and judgment, the agreement should be modified by eliminating all alimony payable to Beverly, and by decreasing child support payments. He

---

[1] The Schulers had two children, the older of whom was emancipated. Beverly received custody of the younger son, Timothy, then age nine. The agreement requires Chester to pay child support until Timothy's emancipation.

[2] General Laws c. 208, § 37, as appearing in St. 1977, c. 495, states: "After a judgment for alimony or an annual allowance for the spouse or children, the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such alimony or annual allowance and the payment thereof, and may make any judgment relative thereto which it might have made in the original action."

[3] Beverly had filed a cross complaint for modification of the agreement, seeking an increase in the alimony and support payments. The two complaints were heard together, and her claim was also dismissed on June 26, 1979.

now argues that certain of the judge's findings of fact were clearly erroneous.

To be successful in an action to modify a judgment for alimony or child support, the petitioner must demonstrate a material change of circumstances since the entry of the earlier judgment. *Robbins* v. *Robbins*, 343 Mass. 247, 249 (1961). *Hinds* v. *Hinds*, 329 Mass. 190, 191-192 (1952). In this case, the judge held that Chester did not prove the requisite change of circumstances. The judge reported his findings and we have a transcript of all the evidence. Accordingly, "the appeal brings before us all questions of law, fact, and discretion." *Krokyn* v. *Krokyn*, 378 Mass. 206, 208 (1979), quoting from *Cohen* v. *Murphy*, 368 Mass. 144, 147 (1975). However, we will not reverse findings made by the judge on the basis of oral testimony unless we are convinced they are plainly wrong. *Consent to Adoption of a Minor*, 363 Mass. 537, 539 (1973). *Whitney* v. *Whitney*, 325 Mass. 28, 28-29 (1949).

We summarize the relevant facts. Chester and Beverly were married in 1953; they have two children by this marriage. Fifteen days after their divorce decree became final in 1976, Chester remarried. He has a son by his second marriage.

At the time of the divorce, Chester was president of and a ten per cent shareholder in Powercube Corporation, a closely held corporation which he had founded in 1967 on the basis of his own inventions relating to specialized power. In 1976, Chester's income as president of Powercube was approximately $46,500. By 1978, his income including bonuses had increased to approximately $55,000. In late 1978, Unitrode Corporation, which owned eighty per cent of Powercube, bought out Chester's stock for $250,000.[4] Unitrode terminated Chester's employment as president of Powercube as of December 31, 1978. As part of his agree-

---

[4] The separation agreement required that, in the event of the sale of his Powercube stock, Chester would pay Beverly ten per cent of his after-tax net of the sale price in excess of $100,000. Pursuant to this provision of the agreement, Chester paid Beverly $7,452.

ment with Unitrode, Chester executed a two-year noncompetition agreement. In return he received, in addition to the purchase price, three months' severance pay ($11,250), a bonus ($10,000), and a distribution from a profit sharing trust ($9,000). Chester's tax liability for the sale of the stock was approximately $70,000. He currently receives income from investments made after the sale of his Powercube stock in the amount of $185 a week ($9,620 a year).

At the time of the modification hearing, Chester had not accepted other employment. Although positions in design engineering, his line of work before he founded Powercube, paid approximately $24,000 a year and were reasonably available, he had decided not to pursue that career alternative.

Chester's apparent career objective is to become the president of another small corporation. In attempting to reestablish himself in such a position, Chester had one job interview during the eight months prior to the modification hearing. He testified that he read want-ads and sought contacts within his industry, but did not consult an executive search organization. Instead Chester organized a consulting business on May 5, 1979. He and his present wife each contributed $5,000 investment capital to that corporation. Each owns fifty per cent of the stock. At the time of the hearing, the corporation had clients with work in progress estimated to be worth approximately $4,000 to $5,000.

At the time of the divorce, Beverly gave music lessons in her home, earning approximately $125 a week. Subsequently she enrolled in nursing school, financing her tuition through education loans, and received a nursing degree. At the time of the modification hearing she was employed as a part-time music specialist registered nurse in a children's ward of a hospital, earning approximately $125 a week.

In summary, at the time of the hearing, Chester's only employment was in the consulting business he established. His income between his termination by Powercube on December 31, 1978, and the hearing in June, 1979, from his bonus, severance pay, and consulting business totaled

$21,000.[5]  He was also receiving $185 a week in investment income.  Chester's net worth at the time of the hearing was $167,000.  Although Beverly had trained as a nurse and worked as a music specialist rather than as a music instructor, her income was approximately the same at the time of the hearing as it had been at the time of the divorce.  Beverly's net worth, including the marital home, was $61,000.

On these facts Chester argues that the judge abused his discretion or otherwise erred in three respects:  (1) in finding that Chester had not sought new employment and did not intend to do so; (2) in relying on Chester's potential income as a design engineer rather than his actual income as a consultant; and (3) in relying on Chester's substantial assets to conclude that Chester had the current ability to pay under the original agreement.  Chester also argues that the court erred in refusing to consider his second family expenses.  Chester's arguments are cumulative.  He argues that given his decreased income and increased expenses, he should not have to deplete all of his assets in making the support and alimony payments.  He further argues that even considering his potential income as a design engineer, the decline in his salary from the amount he earned as president of Powercube warrants a modification.

In determining whether to modify a support or alimony order, a probate judge must weigh all relevant circumstances.  Resolution of the issue rests in the judge's sound discretion.  *Buchanan* v. *Buchanan*, 353 Mass. 351, 352 (1967).  An order for child support may be modified "as the circumstances of the parents and the benefit of the children may require."  G. L. c. 208, § 28, as amended through St. 1976, c. 279, § 1.  *Whitney* v. *Whitney*, 325 Mass. 28, 31 (1949).  The needs of the children, the financial status of the support provider, and the station in life of the respective parties must all be considered.  *Buchanan* v. *Buchanan*, *supra*.  A substantial and permanent decrease in

---

[5] Chester had a net loss of $250 from his consulting business at the time of the hearing.

the income of the support provider is one of the material circumstances to be considered in a request for reduction of a support reward.  See Annot., 89 A.L.R.2d 7, 39 (1963), and cases cited.  However, while a substantial decrease in income or financial status may warrant a modification, such a decrease does not alone compel a modification.  See *Trippe* v. *Trippe*, 237 Ga. 159, 160 (1976).

Bearing in mind the weight to be accorded the exercise of the probate judge's sound discretion, we review the record in its entirety.

1.  Chester argues that the evidence taken as a whole does not warrant the judge's finding that Chester retained the ability to pay the alimony and support obligations as set forth in the original separation agreement.  He specifically challenges the finding that, with the exception of one job interview, he had not sought a new position prior to the modification hearing and did not intend to do so.[6]  We will not overturn the judge's determination unless we find that it was clearly erroneous.  We are not, however, limited to the findings made by him, and we may make such additional findings as are supported by the evidence.  *Whitney* v. *Whitney, supra* at 28-29.

At the hearing Chester presented evidence that he was interested in obtaining a position equivalent to that which he had held at Powercube — president of a small corporation.  Indeed, he stated that he established his consulting business in part as a means of seeking out business contacts which might enable him to locate such a position.  His own testimony that he assumed he could readily get a position as a design engineer, but has chosen not to do so, is inconsistent with his claim that no evidence supports the judge's conclu-

---

[6]Finding number 17 reads as follows:  "With the exception of one (1) job interview, after the termination of his employment with Powercube Corporation, the Husband has not sought a new position and does not intend to do so.  He admits that he could readily obtain employment as an engineer earning in the vicinity of twenty four thousand ($24,000.00) dollars per year.  He intends to work to establish his own consulting business.  He has already earned one thousand ($1,000.00) dollars as a consultant."

sion that Chester is not actively pursuing a new position. The judge's finding, acknowledging Chester's current status in his consulting business, was not clearly erroneous. Chester argues that the judge erred by disregarding his testimony. The record suggests, however, that the judge not only did not disregard Chester's testimony, he based his findings directly upon it.

Based on our review of the record, however, we make the additional finding that Chester has in fact sought professional employment as the president of a small corporation and intends to keep seeking such employment.[7] We acknowledge that Chester has persuasive reasons — salary, personal fulfillment, even ambition — for attempting to reestablish himself on the professional level he had previously reached. However, those reasons must be balanced against his obligations to support his former and present families. It was within the judge's discretion to conclude that it was unreasonable for Chester to wait indefinitely upon the limited prospect of becoming president of a corporation, or the equivalent, when by his own testimony a position with a $24,000 salary was reasonably available.

Furthermore, even were we to disregard the judge's finding number 17 as clearly wrong, see *Ober* v. *Ober*, 1 Mass. App. Ct. 32, 33 (1973), we would not reach a different result in this case. It is not clear that the judge relied only on Chester's current employment status in concluding that he had the present ability to meet his support and alimony obligations. Chester possesses substantial assets, he has not lowered his own standard of living, and his first wife's expenses and income have not changed. Cf. *Carter* v. *Carter*, 563 P.2d 177 (Utah 1977) (no error in judge's refusal to find change in circumstances sufficient to justify modification, where facts showed that husband's income had been reduced from $21,000 at the time of original

_____

[7] Chester's intentions regarding his search for employment are not directly relevant to the issue of changed circumstances at the time of the modification hearing. The question of intent is, however, relevant to the issue of good faith, discussed at note 8, *infra*.

petition to $10,000 at time of petition for modification, that he had remarried and had added financial obligations, but that wife's needs had not decreased). Additionally, Chester himself testified that he expected his business to become profitable within two or three years. Where reduced income is temporary, a modification is not necessarily mandated. See *Reed* v. *Reed*, 260 Iowa 1166, 1168 (1967).

Thus, regardless of Chester's current employment status, we conclude that the evidence as a whole warranted the finding that he retained the ability to continue to make the payments required by the judgment. See *Schnell* v. *Schnell*, 252 N.W.2d 14 (N.D. 1977), holding that after a trial court has refused to reduce alimony and support awards, an appellate court will do so only in "exceptional cases, where compliance with lower court judgments verged on the impossible." *Id.* at 21. In *Schnell*, the totality of the circumstances, including the extent of the husband's assets, his substantial earning ability as demonstrated by past income over many years, and the needs of his wife and children as well as his own needs, supported the trial judge's refusal to modify support and alimony payments. *Id.* at 20.

2. Chester also argues that the judge abused his discretion by improperly considering some factors and refusing to consider others in reaching his conclusion that the alimony and support orders should not be modified. We find no abuse of discretion.

Chester challenges the judge's purported use of Chester's potential rather than actual income in determining his ability to pay. Where a support provider makes an involuntary, or a good faith voluntary, career change, courts asked to reduce the rate of alimony or support payments frequently consider the moving party's actual income rather than his potential income in evaluating his ability to pay. Thus a good faith career change resulting in lowered income may warrant a reduction of alimony and child support payments. See, e.g., *Fogel* v. *Fogel*, 184 Neb. 425 (1969). Cf. *Thomas* v. *Thomas*, 281 Ala. 397 (1967).

Chester asserts that his career change was in fact involuntary, and that he has sought, in good faith, employment

commensurate with that which he held at Powercube.[8] However, the issue at the time of the modification hearing was not simply Chester's sale of stock and concomitant loss of his position as president of Powercube, but also his continuing unemployment over the six months following the sale.

In deciding whether a support provider has the ability to meet his support obligations, the judge must consider all attendant circumstances. Accordingly, he should not be restricted to a consideration of actual earnings but may also consider earning power. We hold that it would not have been an abuse of the judge's discretion to consider Chester's potential rather than actual income as one factor in his decision not to modify the original separation agreement. This holding is consistent with the general rule that where the support provider is earning less than he could with reasonable effort, the trial judge may consider potential earning capacity rather than actual earnings. See *Stiltz* v. *Stiltz*, 236 Ga. 308, 310-311 (1976); *Ellis* v. *Ellis*, 262 N.W.2d 265, 267-268 (Iowa 1978). Cf. *Hickland* v. *Hickland*, 39 N.Y.2d 1 (1976).

3. Chester also argues that his mere possession of substantial assets should not justify the denial of a reduction in support payments. He contends that the judge abused his

---

[8] Although Chester voluntarily negotiated the sale of his business and entered into a noncompetition agreement with Unitrode Corporation, we acknowledge that the voluntariness of these actions was more technical than real; as majority stockholder, Unitrode in effect forced the sale. However, because we find that Chester's employment status was not necessarily critical to the judge's conclusion that Chester had the ability to pay under the original order, we need not reach the question whether, in determining a support provider's ability to pay, a sale by a minority stockholder at the initiative of the majority stockholder should be considered a good faith voluntary action. Nor need we decide what standard of good faith should be required. Compare *Nelson* v. *Nelson*, 225 Or. 257, 260-261 (1960) (In order to refuse modification on basis that husband, acting in bad faith, voluntarily worsened his financial condition, it is necessary to find that he acted with a purpose of jeopardizing the interests of his children), with *Lambert* v. *Lambert*, 66 Wash. 2d 503, 510 (1965) (In order to prove a change in circumstances sufficient to warrant a modification where husband voluntarily reduces his income or curtails his earning capacity, he must make a substantial showing of good faith).

discretion by improperly weighing those assets against other factors. We disagree.

We have not addressed the specific point whether assets should be considered in determining ability to pay for the purposes of modification. However, on the closely related issue of contempt upon failure to make support payments, we have stated: "[W]e think it clear that capital assets may be considered in addition to income in evaluating the ability of a contemnor to purge his contempt. . . . Common sense and basic concepts of fairness support the notion that ownership of a valuable asset demonstrates ability to pay . . . ." *Krokyn* v. *Krokyn*, 378 Mass. 206, 213-214 (1979). We believe the same principles apply here.

Chester further argues that a different and stricter standard should apply in a contempt proceeding than applies in a modification hearing. We find no merit in the argument. Had Chester fallen into contempt, his possession of $167,000 would be clear evidence of his ability to pay and thereby purge himself of contempt.[9] It makes no sense to find that a support provider has the ability to pay amounts owed when he has fallen into arrearage, yet not find that the same economic circumstances constitute ability to make current or prospective monthly payments as they become due.

We do not attempt to detail how substantial the assets possessed by a support provider must be to justify the dismissal of a modification complaint where the provider's income has decreased since the date of the original decree. That question is left to the sound discretion of the judge in his consideration of all the circumstances. Moreover, we do not hold that a support provider would have to deplete his total liquid or other assets in an effort to meet his support obligations. We hold simply that at the time of the hearing on the complaint for modification in this case the balance of equities supported the judge's conclusion that Chester had

---

[9] We note that during the spring of 1979, Chester fell $5,000 into arrears in his alimony and support payments and that, upon a finding of contempt, he expended $5,000 to purge his contempt.

the present ability to pay the amounts required by the agreement and judgment.

Case law from other jurisdictions supports this result. For example, in *Sieber* v. *Sieber*, 258 N.W.2d 754 (Minn. 1977), the husband was employed only sporadically after he sold his insurance business for $111,800. The court noted that (1) the proceeds from the sale of his business would represent a considerable source of income if properly invested; (2) the husband failed to show that he could not engage in gainful employment if he chose to do so; and (3) he had introduced almost no evidence that his own standard of living had so substantially changed since the time of the divorce as to justify termination of the stipulated obligation. As to whether in those circumstances the husband should be required to utilize his assets, if necessary, to meet the alimony obligation, the court stated: "[W]hen an ex-husband voluntarily liquidates his business, a capital asset, and thereby diminishes his future earning capacity, we believe that it would be unjust to hold that he is automatically relieved of future alimony payments, even if it ultimately becomes necessary to pay the ex-wife a portion of the proceeds from the sale." *Id.* at 757 n.2. See, e.g., *Chastain* v. *Chastain*, 73 So. 2d 66, 68 (Fla. 1954).

Like the *Sieber* court, we believe that it would have been unjust, in the totality of the circumstances, to allow Chester to indulge himself in a new and speculative business venture and refuse simultaneously to expend his substantial assets on his familial obligations.

4. Chester argues the further point that the judge erred in refusing to consider as part of his expenses any expenses related to his second wife and their child. This court has never decided the question whether, in an action to modify an alimony or support decree, the judge must consider the second family expenses as a factor in determining changed circumstances. But see *O'Brien* v. *O'Brien*, 325 Mass. 573 (1950). In *O'Brien*, upon finding a change in the circumstances of the former wife, we modified a previous decree eliminating alimony and granted her petition for the

renewal of alimony, stating: "We do not believe that the respondent ought to be permitted to shift to the public the obligation he assumed when he married her. It may be that because of his second marriage he will suffer some financial hardship, but the short answer to that is that he must have entered into the second marriage conscious of his obligations to his former wife so that the second marriage with its attendant obligations affords him no relief." *Id.* at 578. In contrast to *O'Brien*, we find no material change of circumstances here to mandate a modification. Hence we express no opinion on the continuing validity of these dicta.[10]

In this case the evidence as a whole, including evidence as to Chester's income, his income potential and earning history, his assets, his former wife's earnings, and both their expenses and their needs, warranted an implied finding by the judge that at the time of the modification hearing Chester had the ability to make the payments for alimony

---

[10]We note that many jurisdictions have held that the combination of second family expenses with other changed circumstances warrants reduction of alimony or child support. See, e.g., *Fought* v. *Fought*, 94 Ariz. 187 (1963); *Barnes* v. *Barnes*, 246 Ark. 624 (1969); *Mark* v. *Mark*, 248 Minn. 446 (1957); *Walsh* v. *Walsh*, 460 P. 2d 122 (Okla. 1969). Other jurisdictions treat the modification and second family issues as distinct. In those jurisdictions, once the support provider demonstrates a change in circumstances sufficient to justify a downward modification of the support award, he may then introduce the needs of the second family as a factor in determining the extent of that modification. See, e.g., *Lawrence R.* v. *Muriel R.*, 89 Misc. 2d 666, 669-670 (N.Y. Fam. Ct. 1976). We need not decide today whether and to what extent the probate judge must allow evidence of second family expenses at a modification hearing. We note, however, our statement made in the analogous context of a petition for alimony brought by a wife after her former husband's remarriage: "When the respondent married his present wife, no application for alimony had been made by the petitioner . . . . [W]hile such marriage would not be a bar to the petitioner's claim for alimony, still it is a circumstance to be considered with other pertinent facts by the court in determining whether alimony should be granted, and if so, for what amount." *Brown* v. *Brown*, 222 Mass. 415, 418 (1916). See *Allen* v. *Allen*, 326 Mass. 214, 217 (1950). Cf. *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 342 (1980) (the income and assets of second spouses are part of the circumstances relevant to the ability of parents to use their own resources to contribute to the support of their children).

and support mandated by the original judgment, and also to support himself and his second family. Moreover, we here expressly make that finding based upon our own review of the evidence. For that reason we need not reach the question of what consideration, if any, a probate judge should give to second family expenses in an action to modify an alimony or support order. Therefore, the judge's refusal in this case to consider Chester's second family expenses was not error.

*Judgment affirmed.*