SELWYN Z. BARRON vs. JOANNE M. BARRON.

No. 88-P-1080.

Middlesex. November 14, 1989. - July 2, 1990.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Divorce and Separation*, Alimony.

In a divorce action, the relative financial circumstances of the husband and
wife found by the judge did not support his limiting either the provision
to the wife of health insurance for only the nisi period or the award to
her of alimony for only five years. [758-760]

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on March 27,
1987.

The case was heard by *James M. Sweeney*, J.

*David H. Lee* for Joanne M. Barron.

*David E. Cherny* for Selwyn Z. Barron.

PERRETTA, J. This divorce proceeding dissolved a twelve-
year marriage during which the parties lived together for ten
and one-half years. It was a second marriage for both the
husband and wife, whose children from their prior marriages
are now all emancipated. At the time of trial on this divorce,
the husband was sixty-six years of age and the wife fifty-six.
Each has a potentially disabling health condition. Other than
to award the wife $40,000, as a division of property, the
judge left the parties' individual estates undisturbed. The
husband was ordered to contribute to the wife's legal ex-
penses ($20,000), to maintain health insurance for her dur-
ing the nisi period, and to pay her weekly support in the
amount of $300 for five years. On the wife's appeal, we con-
clude that the property division and alimony, unsecured and
limited in duration, do not make adequate provision for the

needs of the wife. We vacate the judgment as it pertains to health insurance and alimony.

I. *The Findings.*

We recite the pertinent facts as the judge found them. When the parties married in 1976, the husband moved into the wife's home, which became the marital residence. Her youngest child lived with them until his emancipation. The husband invested $30,000 in renovating the residence, which was also the business address for his company.

In 1953, the husband had established his own company in the food industry, Primarque Products Co., Inc. (Primarque). For many years, he was the sole employee of the company. Primarque was firmly established at the time of the parties' marriage. The wife made little economic contribution to the business. She was a homemaker. She had an associate's degree and some experience as a secretary. She did minor bookkeeping and telephone work for Primarque.

At the time of their marriage, as put by the judge, their "life style was set." Whatever their earlier station might have been, during their marriage, they "owned their own home . . . had their own automobiles . . . took regular vacation trips [domestic and foreign]," were members of a country club, and dined out about twice a week on a regular basis. The husband worked about sixty hours a week to maintain this life-style. Further, the judge found that the husband "gave generously" to the wife, "i.e., a new automobile, fur coat, jewelry."

In 1981, the husband had a tumor removed from the lining of his brain which resulted in some memory loss. This loss did not, however, interfere with his ability to continue to operate Primarque successfully until 1986, when he decided to transfer control of the company to his son and retire. This decision resulted in marital discord, and the parties ultimately separated.

We describe the financial arrangements of the sale. The husband established a purchase price of $300,000 for Primarque. The corporation was caused to issue its promissory note for $200,000 to the husband. The remainder,

$100,000, was treated as advancement on the son's inheritance.[1] Although not set out in the judge's findings, the son testified that, by the terms of the note, Primarque is to pay only interest on the note for fourteen years. Payment on the principal is not due until the husband attains the age of seventy-nine. Prior to the sale, the husband had life insurance somewhat in excess of $200,000. Primarque now owns that insurance and pays the premiums. In the event of the husband's death, the insurance proceeds will be paid to Primarque which, in turn, will pay the note with those proceeds to the husband's estate.[2]

In addition to the note, the husband has annuities, bonds, and other investments. The judge found the husband's assets to have a value of $654,565. These assets, along with Social Security and disability benefits, provide the husband with a gross weekly income of $1,017.45. The judge also found that the husband receives "help from his son." Although this "help" is neither detailed nor described in the findings, our review of the record, which includes documentary evidence, shows that the husband receives income, health insurance, use of an automobile, and travel expenses from Primarque. In 1987, by way of example, the husband received almost $20,000 in fringe benefits from Primarque.

At the time of the divorce, the wife worked in "retail sales," that is, she was a sales person in a clothing store receiving $126 a week in base pay. The judge attributed an additional dollar per week to her "overtime, commissions, tips, bonuses, and part-time job." Her investment income ($132.12) and alimony ($300) bring her to a gross weekly income of $559.12, which will be reduced by half in April of 1993, or sooner in the event of the husband's death, by reason of the alimony provision in the judgment. The wife has been diagnosed as suffering from emphysema. However, the judge found that her condition "has not appreciably affected her day to day life."

---

[1] The judge's findings included both the note and the gift in the calculation of the husband's assets.

[2] The husband has one other child, a daughter.

As for the wife's estate, the judge found it to be "substantial." In addition to the former marital residence, which has a fair market value of about $174,000, the wife owns two condominium units which produce rental income and contribute to her gross weekly income. Although the judge recognized her joint ownership of this property with her brother in setting a value on it, he neglected to take into account the mortgages, which reduce the value of her estate by about $20,000. Moreover, because of the joint ownership, she does not have unfettered control of the property.[3] Further, the $40,000 total value of her 1985 automobile, furnishings, china, crystal, and silver is a somewhat artificial credit to her estate in terms of her future security. These items, unlike annuities and bonds, produce no income and have no appreciable resale value. Indeed, the 1985 automobile will become a liability when its obsolescence will require its replacement. Even putting aside all these considerations, the wife's estate was found to have a value of $338,795.

II. *The Alimony Award.*

In making the property and alimony award under G. L. c. 208, § 34, it was the judge's rationale (see *Bowring* v. *Reid*, 399 Mass. 265, 267-268 [1987]) that the wife's estate, if prudently managed, would provide her with sufficient income to meet her needs after receiving support for five years from the husband. Although we see no abuse of the judge's broad discretion in determining that the parties would keep their individual assets, we see no support for his finding and conclusion that the wife could maintain herself without assistance from the husband. The only explanation for the limited duration of the alimony award is: "[The husband] has sufficient income to meet his own needs and to provide support for the wife for a limited period of time. The wife has substantial liquid assets and real estate interests. She will need support from the husband for a limited period of time."

At the time of the divorce, the wife's salary and investments were providing her with about $260 a week. Even with

---

[3]The income producing assets in the wife's estate, the condominium units and savings, were inherited by the wife from her mother.

the $40,000 property award, her situation is not going to improve to the extent that, as she grows older, her need for maintenance will cease. Her financial statement reflects a modest life-style which does not take into account the fact that, by reason of the divorce judgment, she has a new and costly need to meet, medical insurance. The wife's inability to have income greater than $260 a week is due to the realities of life over which she has no control. She is employed, and there is no suggestion that her vocational skills could be put to more profitable use. She shares with the husband the limitations age places upon one's ability to continue to earn income. What future security which is available to her from her assets will quickly be lost when her alimony ends. See *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 818-819 & n.14 (1985).

On the other hand, the husband enjoys retirement without a change in life-style. We do not imply that the husband, in view of his age and potential health problems, should be required to work to maintain the marital standard of living for two households. Nor do we suggest that a parent cannot be generous with a child.

It does not, however, take great business acumen to understand that the husband virtually gave a profitable, successful business to his son, thereby divesting himself of the means by which to meet his support obligations. Cf. *Schuler* v. *Schuler*, 382 Mass. 366, 373-375 (1981). Primarque pays his health insurance as well as his life insurance, the proceeds of which will pay the note and pass through his estate, most likely back to his son and daughter, certainly not to the wife. Should he attain the age of seventy-nine, he will receive payment on the principal of the note. He is financially secure.

Any limits on the husband's ability to provide support to the wife are self-imposed. We think it well established that the court is not restricted by an obligor's ability to manipulate his resources to avoid his legal obligations. See *Krokyn* v. *Krokyn*, 378 Mass. 206, 210 (1979); *Pagar* v. *Pagar*, 9 Mass. App. Ct. 1, 5-7 (1980); *Wolfe* v. *Wolfe*, 21 Mass. App. Ct. 254, 257 (1985). These cases stand for the proposi-

tion that one cannot alienate assets while continuing to enjoy their fruits and expect the court to hunt for an unencumbered source of income to satisfy obligations.

The husband has assets in excess of $650,000. The realities of his and his wife's financial situations do not support the judge's limitations on the duration of the alimony award and the denial of health coverage to the wife beyond the nisi period. See *Goldman* v. *Goldman, ante* 603, 612 (1990).

III. *Proceedings on Remand.*

We do recognize that there appears to be insufficient income for each party to enjoy the marital standard of living. However, if the wife is to continue with her modest life-style and have a semblance of security for her future, the alimony award must be revised.

Medical insurance must be provided the wife. Whether her alimony is increased by the cost of the insurance or made available under the husband's coverage, if possible, is a matter left to the judge's discretion. Further, in view of the wife's age, health, and vocational skills, the alimony award, including health coverage, is to be continued until her death or remarriage. Whether the judge chooses to order the husband to provide security for the alimony, such as an annuity, or to bind the husband's estate in the event he predeceases her (see *Farrington* v. *Boston Safe Dep. & Trust Co.*, 280 Mass. 121, 127 [1932]; *Surabian* v. *Surabian*, 362 Mass. 342, 348 [1972]), is a matter left to his discretion.

The portion of the judgment as it relates to alimony and medical insurance is vacated, and the matter is remanded to the probate judge for such further proceedings as he deems necessary to the revision of the judgment consistent with this opinion. Until such time as the probate judge revises the judgment, the judgment is modified so as to provide that the husband is to purchase medical insurance for the wife and pay her alimony in the amount of $300 a week, both until her death or remarriage. In all other respects, the judgment is affirmed. The wife is to have costs of this appeal.

*So ordered.*