NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-135

MARC MAGERMAN

vs.

ANNE MARIE MAGERMAN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Anne Marie Magerman (wife) appeals from a Probate and Family Court modification judgment that, as relevant here, reduced Marc Magerman's (husband's) monthly alimony payment. The wife argues that the judge abused her discretion in modifying the alimony obligation without making the threshold finding that a material change in circumstances rendered the husband unable to continue making the required payments from his income and assets.[2] We affirm.

---

[1] As is our custom, we take the defendant's name from the underlying complaint, even though subsequent pleadings refer to the defendant as Anne Marie Mitchell.

[2] In her notice of appeal, the wife also purports to appeal from the Probate and Family Court judge's order denying her request for attorney's fees. Where she does not argue this issue in her brief, the claim is waived. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019). In any event, on the record before us we discern no abuse of discretion in the

Background.  We summarize the relevant facts as found by the trial judge, supplemented by undisputed evidence in the record.  See Pierce v. Pierce, 455 Mass. 286, 288 (2009).  After a marriage of approximately twenty-seven years, during which two children were born,[3] the parties were divorced by a judgment entered on February 12, 2018.  At the time of the divorce, the husband was both a 26.5564 percent coowner and the chief operating officer (COO) of Massachusetts Burgers Enterprises, LLC (MBE), earning an annual salary of $236,383 in addition to partner distributions resulting in a total taxable income of $451,592.  The wife was employed by Gatehouse Media at the time, earning approximately $70,000 annually.  The divorce judgment incorporated the parties' separation agreement which required, inter alia, that the husband pay the wife $4,506.21 per month in alimony, which represented 32.5 percent of the difference in their base salaries at the time of the divorce.[4]

In June of 2018, the MBE partners executed a nonbinding letter of intent for the sale of MBE that subsequently occurred on January 25, 2019.[5]  The husband received a sum of

_____

judge's denial of the wife's request for attorney's fees.  See Brooks v. Brooks, 65 Mass. App. Ct. 129, 132 (2005).
[3] Both children of the marriage were emancipated at the time of the parties' divorce.
[4] The husband's "base salary" as defined by the separation agreement was $236,383 annually, while the wife's was $70,000.
[5] While the parties anticipated the future sale of MBE at the time of the divorce, the separation agreement was silent as to

2

$1,941,275.80 from the sale in addition to two escrow payments of $131,395.61 and $83,850.26. The husband had previously bought the wife out of her one-half interest in MBE by making a lump sum payment in the amount of $708,583.50 in December of 2018 pursuant to provisions in the separation agreement. Following the sale, the husband received $130,000 in "severance" pay in February of 2019 as compensation for winding down MBE's operations.

On July 25, 2019, the husband filed a complaint for modification of his alimony obligations alleging that MBE had been sold, he was no longer employed, and his "severance" pay had been exhausted. A modification trial was held on May 17, 2021. The trial evidence included the testimony of both parties and the admission of thirty-eight uncontested exhibits including the parties' financial statements dating back to the time of the divorce. The judge found that the husband's only source of income at the time of trial was $567 in weekly unemployment benefits due to the sale of MBE and the exhaustion of his severance pay which had "allowed him to continue to meet all of his expenses, including his alimony obligation," for seven months postsale. The judge credited the husband's testimony "that he began looking for new employment opportunities even

_____

what effect, if any, the sale would have on the husband's alimony obligation.

3

prior to the sale of MBE;" that the business venture he and his partner pursued two weeks after the sale of MBE fell through despite eleven months of negotiations; that he anticipated that he would receive a starting annual salary of $125,000 as a fifty percent owner in a new franchise venture upon execution of the first lease;[6] and that although he was not yet earning a salary, he was willing to attribute this anticipated annual salary as income for purposes of recalculating alimony.

With respect to the husband's total assets, the judge found that they had decreased in value from $2,757,106 at the time of the divorce to $1,059,277.87[7] at the time of trial. After noting that the husband withdrew $100,000 from a Schwab retirement account in December of 2020 to meet his ongoing living expenses, the judge found that he "will continue to draw down his retirement assets unless and until he begins drawing a salary." The judge determined that the husband "had the ability to continue to pay his current alimony obligation from February of 2019 through August 2019" when his "severance" pay exhausted, but that "since August 2019, other than unemployment, Husband

---

[6] At the time of trial, the husband had signed a multiunit operating agreement, invested $125,000 into the franchise venture with an anticipated $300,000 total contribution, and hoped that the lease for the first location would be signed within thirty days from the trial.

[7] The husband's total assets were listed at $916,026.25 on his most recent financial statement, but this amount reflected only half of the equity in the home he owns with his new wife.

4

has had no additional income and has been forced to use savings and retirement to meet his expenses."[8]

In contrast, the judge found that the wife's total assets had increased significantly to $1,635,082.20 due in large part to the $708,583 payment that the husband made to buy out her one-half interest in MBE. The judge further found that the wife's employment income had "remained substantially the same since the time of the divorce." Noting the increase in the wife's weekly expenses from $2181.02 at the time of the divorce to $3068.32 at the time of trial[9] and her reliance on alimony payments, the judge determined that the wife had a continued need for support "to meet her reasonable needs and maintain a modified semblance of the parties' marital lifestyle." Having "considered all factors under G. L. c. 208, [§ 53 (a)] on which evidence was presented at trial," the "Wife's need for support, and Husband's ability to pay support, including the totality of Husband's financial circumstances," the judge concluded that the

_____

[8] While the husband's nonsupport weekly expenses had increased from $1,948.47 at the time of the divorce to $2,440.39 at trial, the judge did not afford much weight to this increase because the husband anticipated that his current wife would begin contributing to these expenses upon her return to work earning a $100,000 salary after two recent back surgeries.
[9] The judge found that this increase was "due in large part to [the wife's] voluntary contributions toward the parties' adult daughter's expenses and the cost of her health insurance."

5

husband "met his burden of establishing a material change in circumstances."

The modification judgment entered on October 20, 2021, reducing the husband's monthly alimony payment from $4,506.21 to $1,393.36, retroactive to September 1, 2019. The judge arrived at this figure by attributing $125,000 in annual income to the husband, using the wife's 2020 income of $73,552.75, and applying the alimony formula in the separation agreement: 32.5 percent of the difference in the parties' income. Given the retroactivity of the reduction, the wife was ordered to reimburse the husband $80,934.10 in one lump sum within forty-five days of the judgment. The judge further ordered that for the duration of the husband's alimony obligation, the parties must annually exchange copies of all financial documentation demonstrating their income from the prior year. This appeal followed.[10]

Discussion. "To be successful in an action to modify a judgment for alimony . . . , the petitioner must demonstrate a material change of circumstances since the entry of the earlier judgment." Schuler v. Schuler, 382 Mass. 366, 368 (1981). See G. L. c. 208, § 49. "In determining whether to modify a support

---

[10] The wife filed a motion to stay pending appeal that was denied by a single justice of this court who determined that the wife had "failed to demonstrate the likelihood of success on the merits and substantial risk of irreparable harm."

or alimony order, a probate judge must weigh all relevant circumstances" including, inter alia, "the financial status of the support provider," "the station in life of the respective parties," "as well as whether, on all of the economic circumstances, the obligor spouse has the 'present ability to pay the amounts required by the agreement and judgment.'" Greenberg v. Greenberg, 68 Mass. App. Ct. 344, 347 (2007), quoting Schuler, supra at 370, 375-376.  The judge "must consider the totality of the payor's financial circumstances, including his or her income and available assets."  Dolan v. Dolan, 99 Mass. App. Ct. 284, 289 (2021).

"[W]e recognize that a judge enjoys considerable discretion in fashioning an appropriate modification judgment, and . . . the judgment may not be reversed in the absence of an abuse of discretion."  Pierce, 455 Mass. at 293.  An abuse of discretion exists where the judge's "findings of fact were not supported by the record or conclusions failed to reflect consideration of applicable legal principles."  Greenberg, 68 Mass. App. Ct. at 348.  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citations omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

7

On the record before us, we discern no abuse of discretion in the judge's decision to reduce the husband's alimony payment. The judge considered all required factors pursuant to G. L. c. 208, § 53, in her comprehensive findings of fact and rulings of law in which she analyzed the totality of the parties' financial circumstances. See Pierce, 455 Mass. at 295. Contrast Greenberg, 68 Mass. App. Ct. at 348 (trial judge failed to determine value of husband's assets or potential income derived from substantial retirement funds). At the time of trial, the wife had $575,804.33 more in assets than the husband, and he had withdrawn $100,000 from a Schwab retirement account in December 2020 to meet his living expenses. In finding that the husband "had the ability to continue to pay his current alimony obligation from February of 2019 through August 2019," the judge implicitly concluded, and the record supports, that the husband did not have the ability to pay the original alimony amount after August of 2019 without further depleting his assets. See Dolan, 99 Mass. App. Ct. at 291. Contrast Greenberg, 68 Mass. App. Ct. at 346-347 (reversing modification judgment where husband's retirement assets had appreciated and he was "able to meet his support obligations . . . without diminishing his capital assets or affecting his ability to maintain his standard of living").

While the wife contends that the husband did have the ability to pay because he admitted that he could make the alimony payments for two more years before exhausting his total assets, "a support provider does not 'have to deplete his total liquid or other assets in an effort to meet his support obligations.'" Katz v. Katz, 55 Mass. App. Ct. 472, 483 (2002), quoting Schuler, 382 Mass. at 375. See Schuler, supra ("We do not attempt to detail how substantial the assets possessed by a support provider must be to justify the dismissal of a modification complaint where the provider's income has decreased . . . [t]hat question is left to the sound discretion of the judge"). The judge considered "all the statutory factors and reach[ed] a fair balance of sacrifice between the former spouses." Pierce, 455 Mass. at 296. Accordingly, we conclude that the judge's decision to reduce the husband's alimony obligation did not fall "outside the range of reasonable alternatives." L.L., 470 Mass. at 185 n.27.[11]

---

[11] We reject the wife's related argument that the husband had the ability to pay the original alimony amount based on his expenditures including, inter alia, his new wife's engagement ring while he was still earning a salary, home improvements, a gift of $253,150 to his new wife -- $130,000 of which came from the sale of the husband's condominium after the divorce -- to purchase a home, and travel. The judge considered the husband's spending in her analysis and found that these were nonrecurring expenses, which is supported by the record.

9

The wife's argument that the judge erroneously deemed the husband's American Express account valued at $341,651.33 a retirement asset and failed to account for it in determining his ability to pay is unavailing.  We note that there is an ambiguity with respect to whether the American Express account was properly classified as a retirement asset or a savings account.[12]  However, the judge included the value of the American Express account in her determination of the husband's total assets at the time of trial and found that he "has been forced to use savings and retirement to meet his expenses" and "will continue to draw down his retirement assets unless and until he begins drawing a salary."  It is thus evident that the judge considered the husband's American Express account when determining his ability to pay.  Where the record supports the judge's findings, we cannot conclude that they were clearly erroneous.

Likewise, the wife's contention that the judge erred by attributing a "completely fictional" income to the husband and reducing the husband's alimony payment based on a temporary, as opposed to permanent, reduction in income lacks merit.  The judge, though not required to attribute income to the husband,

---

[12] On the husband's financial statements submitted in March, April, and May 2021, the American Express account is listed as a retirement asset while in February, July, and October 2020 it is listed as a savings account.

10

did so at his request based on his testimony that he and his business partner agreed to his future salary of $125,000 in their new franchise venture upon execution of the first location's lease. The record supports the judge's attribution of income, and "we will not reverse findings made by the judge on the basis of oral testimony unless we are convinced they are plainly wrong." Schuler, 382 Mass. at 368. Furthermore, the judge acknowledged that $125,000 represents the husband's "beginning salary" that may increase in the future if the franchise venture is successful. Finally, by ordering the parties to exchange financial documentation each year, the judge invited annual review to account for future changes in the parties' incomes.[13],[14]

Judgment affirmed.

By the Court (Wolohojian, Neyman & Smyth, JJ.[15]),

*Joseph F. Stanton*

Clerk

Entered: May 4, 2023.

---

[13] We decline both parties' requests for attorney's fees. With respect to the husband's request pursuant to G. L. c. 231, § 6F, we reject his argument that the wife's appeal is frivolous or brought in bad faith.

[14] To the extent that we have not specifically addressed subsidiary arguments in the parties' briefs, they have been considered, and do not warrant further discussion. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[15] The panelists are listed in order of seniority.

11